Irwin H. LAWHORN, Appellant,

v.

The ATLANTIC REFINING COMPANY, Appellee.

No. 18980.

United States Court of Appeals
Fifth Circuit.

Feb. 14, 1962.

**354**

—————◆—————

H. G. Rawls, Albany, Ga., Albert Mims Wilkinson, Jr., Bruce B. Edwards, Atlanta, Ga., for appellant.

James V. Davis, Albany, Ga., Charles J. Bloch, Ellsworth Hall, Jr., Bloch, Hall, Groover & Hawkins, Macon, Ga., Leonard Farkas, Farkas, Landau and Davis, Albany, Ga., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal brings into focus the relationship between F.R.Civ.P. 12(b) [1] and 13(a), 28 U.S.C.A.,[2] and it also raises the recurring problem of whether summary judgment was the proper remedy. The primary question is whether a compulsory counterclaim must be asserted, or lost, by the party whose motion to dismiss is successful because of a failure

1. F.R.Civ.P. 12(b). "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted, * * *. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. * * * "

2. F.R.Civ.P. 13(a). "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *."

to state a claim upon which relief could be granted. The District Court said no. We agree. Summary judgment was then inevitable. We accordingly affirm.

Two suits are involved—the first brought by Lawhorn, and the second, by Atlantic Refining. While this appeal tests only the validity of the rulings in the second suit, the rulings of the first suit are of controlling importance and so vital to the understanding of those questioned here that a summary of Lawhorn's original suit is essential.

Lawhorn was a "jobber" for Atlantic in Georgia. This relationship was to continue from July 1, 1959 to June 30, 1962, and thereafter from year to year unless terminated by either party at the end of the original term or of any subsequent contract year. This contract contemplated that Lawhorn would purchase petroleum products from Atlantic to be distributed to various retail outlets in a specified territory. The price provided in the written contract was flexible, but was apparently to be the same for Lawhorn as for Atlantic's other distributors.[3]

All went well until February 25, 1960, when Lawhorn filed the first suit against Atlantic for $168,330.00 damages. The basis for this first suit was that Atlantic had breached the distributorship contract, as modified by contemporaneously executed supplemental agreements which would give him a lower price than other distributors enjoyed.[4] His pleadings asserted that after he had received and paid for 390,000 gallons of gasoline "* * * at the price fixed and agreed upon in said supplemental memorandum agreements, * * *" Atlantic notified him on February 3, 1960 that "* * * all price support on gasoline prices * * are withdrawn * * *."

Atlantic filed a motion to dismiss for failure to state a claim upon which relief could be granted, F.R.Civ.P. 12(b) (6). This motion was granted sustaining Atlantic's theory that because of the parol evidence rule Lawhorn could not prevail on his claim for breach of a written contract as modified by the alleged parol agreements. The suit was dismissed on August 15, 1960. Atlantic filed no pleadings other than the motion to dismiss. No appeal was taken from that judgment.

The second stage of this litigation, and the initial step in this case, began on December 8, 1960, when Atlantic filed the second suit in the Middle District of Georgia against Lawhorn for $17,378.78 on an open account. Other relief not in issue here was also requested. Summary judgment for Atlantic was entered for $17,378.78.

The accuracy of the open account relating to products sold by Atlantic to

---

3. "Price. The price shall be determined as follows:

"Atlantic agrees to bill and Buyer agrees to pay for Atlantic Imperial at Atlantic's contract price for distributors as posted for these products on date of shipment at Jacksonville, Florida District Office for delivery to ............, Georgia.

"For example, Atlantic's contract price for distributors as posted at Jacksonville, Florida, District office today 4 June 1959 for delivery to Sylvester, Georgia is 14.-15¢ per gallon for Atlantic Regular and 17.15¢ per gallon for Atlantic Imperial, exclusive of all taxes."

4. Plaintiff alleged in this first suit that "* * * at the time of the negotiation of said contract on behalf of said defendant by the said Charles M. English the parties agreed that the contract price for distributors would be stated in the contract for public consumption but that the actual price at which petroleum products would be sold by the defendant to the plaintiff would be 6¢ per gallon below the normal tank-wagon price of Worth County Georgia, f. o. b. Southeastern Terminal, Albany, Georgia, and any variation in price parties would use Platt's Oil Gram as a guide. This for regular gas. On Imperial gas the price would be 6/46¢ per gallon (profit) below normal tank-wagon price, f. o. b. Jacksonville, Florida Terminal, and said gasoline in both instances was thereafter invoiced at said prices, including Imperial gasoline at 14.84¢ per gallon, and the said Charles M. English did then and there deliver in his own handwriting to plaintiff the price at which gasoline would be sold to plaintiff under the terms of said contract in truth and in fact. * * *"

Lawhorn was sworn to by Atlantic's Credit Manager. Lawhorn denied without sworn verification or affidavit that he owed Atlantic anything, and as a second defense, he denied being indebted to Atlantic because the products listed in the account were inferior in quality to that specified in the contract. His third defense was a counterclaim for $72,000 as damages for Atlantic's breach of contract. Atlantic moved to strike Lawhorn's second and third defenses because those claims had been previously adjudicated in favor of Atlantic in the prior (first) suit.

Both parties, with supporting affidavits, moved for summary judgment. Atlantic's motion was granted and Lawhorn's motion denied. The judgment reciting that " * * * the matter contained [in those defenses] having been previously adjudicated," Lawhorn's second and third defenses were dismissed. To Lawhorn's contention that the first suit had likewise foreclosed Atlantic since it had not therein filed its open account demand as a counterclaim, the trial Judge ruled that Atlantic was not required to assert this present open account claim as a compulsory counterclaim in the prior suit " * * * inasmuch as no answer was ever filed by the Atlantic in the other [first] case and that other [first] case was controlled solely on the basis of a motion to dismiss."

From those rulings Lawhorn appeals.

So far as we can ascertain no Court of Appeals has yet decided the question whether a 13(a) compulsory counterclaim must be filed where a 12(b) (6) motion to dismiss the complaint for failure to state a claim has been granted. The two federal District Courts that have considered the question have reached opposite answers.[5] We therefore write on a clean slate.

■ Undoubtedly, the general rule—as F.R.Civ.P. 13(a) plainly implies—is that one who has a counterclaim arising out of the same transaction or occurrence and does not advance it will be thereafter precluded from asserting it. This rule is predicated on the policy that all such related disputes between the parties should be settled in a single lawsuit.[6] This policy is usually effectuated by relying on notions of res judicata, waiver or estoppel. We find no necessity in this case of bringing into play these specific legal concepts because the Rules themselves, under a fair construction, bring about the same result.

■ Taking the Rules at face value, it is clear that a plaintiff must have a *claim* before a defendant is required to assert a compulsory counterclaim. A counterclaim must be pressed only when it is related to the " * * * subject matter of the opposing party's *claim* * * *." F.R.Civ.P. 13(a) (emphasis added). That is what makes it a *counter*claim. And it is only to such a *counter*claim that the Rule attaches a compulsory character. When Atlantic's motion to dismiss was successful, it was a judicial determination that Lawhorn had no *claim* upon which relief could be granted. If there was no claim, no counterclaim was required.

■ But going further, if the counterclaim is one which must be asserted, i. e. is compulsory, then it must be set forth in a *pleading*. Rule 12(b) makes a clear distinction between a *pleading* and certain motions, including a motion to dismiss. The Rule gives the party the option of asserting this defense by way of a pleading or a motion in these words: " * * * except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which

5. See Schott v. Colonial Baking Co., W.D. Ark., 1953, 111 F.Supp. 13, and Douglas v. Wisconsin Alumni Research Foundation, N.D.Ill., 1948, 81 F.Supp. 167.

6. An excellent analysis of the problems involving compulsory counterclaims can

be found in Wright, Estoppel by Rule: The Compulsory Counterclaim Under Modern Pleading, 38 Minn.L.Rev. 423 (1954). See also 1A Barron & Holtzoff, Federal Practice and Procedure § 394.1 (1960 Wright ed.) ; Annot., 22 A.L.R.2d 621 (1952).

relief can be granted, \* \* \*." But if a motion is used, there is no doubt as to the proper sequence since "a motion making any of these defenses *shall* be made *before* pleading if a further pleading is permitted." (Emphasis added.)

After such a motion to dismiss for failure to state a claim is made, there is no reason to file any other pleadings until the motion is acted upon. If the motion is granted, no further pleadings will be necessary. If the motion is denied, time is allotted in which to file an answer.

This is borne out by Rule 12(a) which provides that the ordinary time periods are altered when the motions allowed in 12(b) are used. The Rule prescribes that "\* \* \* if the court denies the motion or postpones its disposition until the trial on the merits, the *responsive* pleading shall be served within 10 days after notice of the court's action; \* \* \*." (emphasis supplied). Therefore, if the motion to dismiss had been denied, Atlantic would still have had 10 days in which to file its counterclaim or other pleadings. But in this case the motion was granted, which amounted to a judicial declaration that Lawhorn had no claim. The failure of Atlantic to file its "counterclaim" at the time of its motion to dismiss did not then precipitate the coercive sanctions of Rule 13(a) since Rule 12(a) authorizes the postponement of all "responsive" pleadings. And once the motion to dismiss was sustained there was no suit or claim or demand to which any "responsive" pleading had to be filed.

Furthermore, the principle back of Rule 13(a) of concluding all related controversies in one suit must take into some account the equally valid and general proposition that a claimant should be able to choose his own forum.[7] If one hauled into Court as a defendant has a claim but the adversary plaintiff has not, the nominal defendant ought to be allowed to name the time and place to assert it. He should not be forced into court by a would-be plaintiff and forced to assert, or lose, a claim which he may choose not to litigate at all, or which he may choose to assert at another time and place. It is one thing to concentrate related litigation once it is properly precipitated. It is quite another thing for the Rules to compel the institution of litigation. The Rules should be construed in such a manner as to do substantial justice. Under the pain of foregoing permanently a valid "counterclaim" by such a putative defendant, the Rules ought not to be construed in any such barratrous fashion.

When it comes to the subsidiary question whether summary judgment was proper, Atlantic's supporting affidavit was sufficient to show the accuracy and validity of the open account. It was stated in the form required by Rule 56(e) as though the employee in charge of the books, records and accounts were testifying on the stand. It made a prima facie case showing that there was no genuine issue of fact concerning dates, times and quantities, prices charged and payments made. Lawhorn's reply affidavit did not undertake to set forth any factual details as to any such facets. It was a mere paper denial and as such was insufficient to avoid summary judgment. Bruce Construction Corp. v. United States, 5 Cir., 1957, 242 F.2d 873. So far as the controverting affidavit undertook, in like conclusory terms, to assert that the gasoline was inferior in quality, no different result is required. As the affidavit itself states in so many words, supplying gasoline of inferior quality was not what Lawhorn contracted to purchase or Atlantic to sell. In short, this showed a

---

7. See the Supreme Court's statement that "\* \* \* unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055. The principle that a defendant should not be able to control the place of litigation is similarly applied in a 28 U.S.C.A. § 1404(a) context in Hoffman v. Blaski, 1960, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254.

breach of contract by Atlantic. But this issue was no longer open since res judicata forecloses not merely what was actually involved in the prior (first) suit, but all that might have been.[8]

Affirmed.

---

**8.** See Baltimore S.S. Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Alexander v. Commissioner, 5 Cir., 1955, 224 F.2d 788; Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 1948, 172 F.2d 601. See also, 2 Moore, Federal Practice § 12.14, at 2267 (2d ed. 1961); 50 C.J.S. Judgments § 716 (1947). See also the following Georgia materials: Ga.Code § 110–501; Baker v. Decatur Lumber & Supply Co., 211 Ga. 510, 87 S.E.2d 89; Perry v. McLendon, 62 Ga. 598.