The HORN & HARDART COMPANY, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.

Civ. A. No. 85–0820.

United States District Court, District of Columbia.

April 24, 1987.

---

**11.** 18 U.S.C. § 1965(a).

Peter Rousselot, Washington, D.C., for plaintiff.

John C. Morland, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

### I. INTRODUCTION

In *Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, Civil Action No. 85–0820 (D.D.C. May 30, 1985) ("*Horn & Hardart I* "), *aff'd*, 793 F.2d 356 (D.C.Cir.1986), this Court held that, pursuant to certain contracts, National Railroad Passenger Corporation ("Amtrak" or "the Railroad") had the right to terminate three restaurant leases of The Horn & Hardart Company ("Horn & Hardart" or "the Company") at the Pennsylvania Station ("Penn Station") in New York.[1] Accordingly, the Court denied plaintiff Horn & Hardart's requests for (1) a declaratory judgment that Amtrak's attempted termination of the leases was unlawful; (2) an injunction preventing Amtrak from attempting to oust Horn & Hardart from the premises; and (3) an award of damages of not less than $2.5 million.

In the wake of *Horn & Hardart I*'s affirmance on appeal, Amtrak, the original defendant, took the initiative and filed a petition for an award of "further relief" against Horn & Hardart pursuant to 28 U.S.C. § 2202.[2] On the basis of certain provisions in the operative leases, Amtrak alleges that it is entitled to recover damages for Horn & Hardart's hold-over at Penn Station during the litigation of *Horn & Hardart I* and for attorney fees and court costs arising out of Horn & Hardart's decision to hold-over. For reasons provided hereafter, the Court grants Amtrak much of the relief it requests.

### II. BACKGROUND

Few facts are necessary to evaluate Amtrak's petition. On November 29, 1984, Amtrak transmitted three notices to Horn & Hardart instructing the Company that its three Penn Station leases would terminate after 90 days. Despite this notice, Horn & Hardart did not vacate its leaseholds. Instead, the Company initiated *Horn & Hardart I* in an effort to demonstrate that Amtrak's termination was improper.

Nearly three months later, on May 30, 1985, this Court upheld Amtrak's position. *See Horn & Hardart I* at 9. Notwithstanding that ruling, Amtrak had to prosecute three consolidated actions in New York landlord-tenant court over a two-month period to recover its properties. *See National Railroad Passenger Corporation v. The Horn & Hardart Co.*, L and T Index Nos. 36876/85, 36877/85, 36878/85 (N.Y.Civ.Ct., Part 52) (Petitioner's Opposition to Respondent's Motion to Dismiss at Exhibit A). Consequently, on August 5, 1985, Horn & Hardart vacated the Penn Station premises. Upon departure, in compliance with a liquidated damage provision in the lease, Amtrak paid Horn & Hardart $180,000 to compensate the Company for losses occasioned by Amtrak's early termination of the leases. *Id.; see Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, 793 F.2d 356, 360 (D.C.Cir.1986). It is noteworthy that, during the five-month hold-over period, Horn & Hardart also continued to profit from its food concessions at Penn Station.

### III. HORN & HARDART'S MOTION TO DISMISS

Before considering Amtrak's request for damages, the Court first addresses the jurisdictional, procedural, and substantive arguments raised by Horn & Hardart to block disposition of this matter on the merits.

---

**1.** The facts relevant to this holding are fully discussed in *Horn & Hardart I* and will not be reiterated here.

**2.** Section 2202 provides as follows:

[f]urther necessary *or proper* relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against *any adverse party* whose rights have been determined by such judgment.
28 U.S.C. § 2202 (emphasis added).

## A. *Jurisdiction*

Horn & Hardart first challenges the jurisdiction of this Court. Respondent founds its argument on an alleged procedural defect. After this Court rejected Horn & Hardart's original claims, the Company appealed the decision to the Court of Appeals for this Circuit. Horn & Hardart correctly maintains that its notice of appeal divested this Court of jurisdiction over "those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). From this premise, the respondent concludes that "[t]he Court of Appeals' June 17, 1986 affirmance of this Court's judgment resolved all outstanding issues in this proceeding, leaving nothing for this Court to decide." Respondent's Motion to Dismiss at 6. The Court finds this conclusion unsubstantiated and erroneous.

It is irrefutable that an appellate mandate is completely controlling as to all matters decided and disposed of by the decree. *See Elias v. Ford Motor Co.,* 734 F.2d 463, 465 (1st Cir.1984); I.B.J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404[10] (2d ed. 1983). A district court obviously cannot flaunt matters addressed by an appellate mandate. *See Briggs v. Pennsylvania R. Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948). Those cases cited by the respondent illustrate only this principle; each involved a lower court's attempt to enlarge a specific appellate mandate by increasing the amount of judgment the mandate specified. *See, e.g., Elias, supra,* 734 F.2d at 465 (attempt by district court to modify amount of appellate award by adding prejudgment interest). No case cited by respondent addresses a situation comparable to the one in this case, where the appellate mandate is silent as to matters addressed to the District Court after the conclusion of appellate review and a federal statute contemplates a return to the District Court.

 The Court concludes that where there is statutory authority to return to the district court, and jurisdiction would otherwise be proper, litigation secondary to the original may proceed even though an appellate mandate does not expressly grant jurisdiction.[3] Section 2202 of the Declaratory Judgments Act expressly provides for "further relief." 28 U.S.C. § 2202, *supra,* at note 2. This provision has been interpreted as providing for "supplemental" relief which may be granted in a proceeding subsequent to the original. Borchard, *Declaratory Judgments* 438–41 (2d ed. 1941). As such, courts have routinely allowed separate proceedings for further relief in the District Court which heard the original case even though an appellate court has rendered a decision upholding the judgment in the interim. In *McNally v. Am. States Ins. Co.,* 339 F.2d 186 (6th Cir.1964), the plaintiffs instituted an action for declaratory judgment against their insurance carrier to ascertain the extent of their liability in actions brought against them by certain third parties. The District Court held that the policy wholly insured the plaintiffs. That judgment was affirmed on appeal. Thereafter, the plaintiffs returned to the District Court and filed a "Petition for Further Relief" pursuant to 28 U.S.C. § 2202. The Sixth Circuit affirmed the propriety of this procedure. *Id.* at 187; *see Valley Oil Co. v. Garland,* 499 S.W.2d 333 (Tex.Civ.App.1973); *see also McCann v. Kerner,* 436 F.2d 1342, 1343 (7th Cir.1971) (section 2202 "contemplates that subsequent to the issuance of a declaratory judgment, a court may [grant further relief]").[4]

This Court agrees with the uncontradicted line of cases holding that section 2202 actions for further relief may be initiated

---

3. In this case, there is diversity of citizenship, 28 U.S. § 1332.

4. To rebut Amtrak's reliance on section 2202, Horn & Hardart principally relies on *Peterson v. Lindner,* 765 F.2d 698, 703 (7th Cir.1985). That case, however, is inapt. *Lindner* addressed a wholly different question: whether a declaratory judgment issued pursuant to 28 U.S.C. *§ 2201*

constitutes a "final judgment" for purposes of immediate appeal under 28 U.S.C. § 1291. *Lindner* thus concerns the appealability of a declaratory judgment in the first instance, not the effect of an appeal on the propriety of using section *2202* in the court which originally heard the case.

after an appeal of the original action. There was no way the appellate mandate could provide for Amtrak's decision to seek further relief since that decision did not become full-blown until after the mandate had issued. Moreover, it would be in incongruous for district courts to have the absolute right to hear petitions for further relief when no appeal is lodged but no right after an appeal unless expressly granted by an appellate court. On the basis of the foregoing, the Court finds jurisdiction proper.

### B. *Scope of Section 2202*

Horn & Hardart's second concern is with the reach of section 2202. The respondent concedes that "further relief" embraces coercive remedies like damages. *See* Borchard, *supra*, at 441. However, Horn & Hardart argues that any damages "must in fact be 'further relief' which is 'based on' the declaratory judgment—an alternative form of relief to which the litigant has already proved his entitlement in the declaratory judgment action." Respondent's Motion to Dismiss at 10 (citing 28 U.S.C. § 2202).

Respondent's construction of section 2202 is unduly narrow and does not state the law of the federal courts. Section 2202 expressly provides that "further relief" must be "based on" a declaratory judgment. Respondent construes the words "based on" to mean that further relief is only appropriate *to effect* a declaratory judgment. A few state courts have so held. In *Oklahoma Alcohol Beverage Control Bd. v. Central Liquor Co.*, 421 P.2d 244 (Okla.1966), the Court held that the Oklahoma Declaratory Judgment Act, which tracks the Uniform Declaratory Judgments Act, 9A Uniform Laws Annotated 1, only authorizes "further relief" "wherever such relief becomes *necessary in order to effectuate* the declaratory judgment." *Central Liquor Co., supra*, 421 P.2d at 247 (emphasis added). *See also State Farm Mutual Auto Ins. Co. v. Mohan*, 85 Ill.App.2d 10, 228 N.E.2d 283, 290 (Ill.App.Ct.1967) (the Illinois Declaratory Judgments Act "contemplates further re-

lief based on the rights determined [in the earlier declaratory judgment proceeding]").

■ State precedent is, of course, not binding on this Court. Moreover, the cases relied upon by Horn & Hardart are not persuasive since neither bothers to closely read the language of their respective declaratory judgments statutes. Further relief, based on the original declaratory judgment, may be granted wherever it is either "necessary *or proper*." 28 U.S.C. § 2202 (emphasis added). Propriety is of course a broader concept than necessity. In consideration of this language, the requirement that a plea for further relief must be "based on" the declaratory judgment should be broadly read. In *Edward B. Marks M. Corp. v. Charles K. Harris Music Publishing Co.*, 255 F.2d 518 (2d Cir.), *cert. denied*, 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958), the Second Circuit held that a plaintiff who had initiated a declaratory judgment action to establish ownership rights in certain copyrights could thereafter petition for further relief pursuant to section 2202 for an adjudication of infringement and an accounting. *Id.* at 520, 522. Likewise, Amtrak's present claims for damages flow directly from the judgment of this Court. The Court finds it both proper and efficient for Amtrak to prosecute its claims in a petition for further relief. Having decided the action upon which Amtrak's petition is founded, the Court is familiar with the case. To force Amtrak to initiate a new lawsuit which might be heard by a different court would be wasteful of judicial resources.

### C. *Timeliness*

Horn & Hardart's third contention is that Amtrak's request for further relief is time barred by Federal Rule of Civil Procedure ("Rule") 59(e). That Rule states, "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e).

In support of its position, respondent cites to numerous cases holding that attorney fees, recovery for which is integral to the merits of a case, must satisfy the re-

quirements of Rule 59(e). *See, e.g., Hairline Creations, Inc. v. Kefalas,* 664 F.2d 652, 660 (7th Cir.1981); *Hooper v. FDIC,* 785 F.2d 1228, 1232 (5th Cir.1986). Horn & Hardart asks the Court to analogize this reasoning to the instant case. Although no court has ever applied Rule 59(e) to petitions for "further relief," Horn & Hardart maintains that the absence of judicial application does not imply that Rule 59(e) should not be applied in declaratory judgment actions. Respondent's Reply at 7. To the contrary, the Court construes judicial silence in this area as an indication that the respondent's argument has no merit.

■ Rule 59(e) is phrased in terms of altering or amending a judgment; section 2202 provides for a different kind of remedy: further relief. Moreover, Rule 59(e) explicitly states that any motions to alter or amend a judgment "shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). There is no similar language in section 2202. The Court will not divine congressional intent to impose a rigid 10–day time limit on petitions for further relief without the slightest hint that such an obstacle is meant to exist.

■ More properly, the rule in the federal courts is that a petition for further relief can be brought so long as the petitioner is not barred by laches. *See Edward B. Marks Music Corp., supra,* 255 F.2d at 522; *see also Besler v. United States Dep't of Agriculture,* 639 F.2d 453 (8th Cir.1981) (20 months elapsed before petitioner sought further relief); *see generally* 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 2771 (1983) (section 2201 "is broad enough to permit the court to grant additional relief long after the declaratory judgment has been entered, provided that the party seeking relief is not barred by laches"). Applying this standard, Amtrak's action, filed less than two months after the decision of the Court of Appeals affirming *Horn & Hardart I,* was undoubtedly timely.

## D. *Counterclaim*

Horn & Hardart next sets up a defense based on Rule 13(a). In pertinent part, that Rule states the following:

[a] *pleading* shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . .

Fed.R.Civ.P. 13(a) (emphasis added). According to the respondent, Amtrak's failure to counterclaim for damages pursuant to Rule 13(a) should bar its attempt to prosecute its current action.

■ In response to this argument, Amtrak points to the language of Rule 13(a) and argues that the Rule is inapplicable by its own terms. The Court agrees. Rule 13(a) does not require a counterclaim to be filed until such time as a party submits "a pleading." In *Horn & Hardart I,* Amtrak filed no pleading of any kind. *See* Fed R.Civ.P. 7 (defining "pleadings allowed"). Rather, in response to Horn & Hardart's complaint, Amtrak filed a motion "to dismiss or, in the alternative, for summary judgment." Rule 12 expressly approves this conduct stating that a pleading is generally required in response to a complaint,

except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted [and] . . . [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . .

Fed.R.Civ.P. 12(b). The cases are uniform in holding that a counterclaim need not be filed in such circumstances. *See Lawhorn v. Atlantic Refining Co.,* 299 F.2d 353, 356 (5th Cir.1962); *Potter v. Carvel Stores of New York, Inc.,* 203 F.Supp. 462, 464–65 (D.Md.1962), *aff'd,* 314 F.2d 45 (4th Cir.

1963); *United States v. Thompson*, 262 F.Supp. 340, 342–43 (S.D.Tex.1966).[5]

Horn & Hardart entreats the Court to disregard formalistic application of Rule 13(a) in order to uphold the Rule's purpose "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 625 (D.C.Cir.1975) (quoting *Southern Constr. Co. v. United States ex rel. Pichard*, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962)). The Court declines the invitation. In this case, the policy driving Rule 13(a) must give way to a more important concern. When Amtrak filed a Rule 12(b) motion in response to Horn & Hardart's complaint in *Horn & Hardart I*, Amtrak was in effect arguing that Horn & Hardart had not proffered a valid claim. In holding for Amtrak, the Court confirmed the Railroad's contention. The so-called claim did not require a pleading in response. *See* Fed.R.Civ.P. 13(a), 12(b). In such a case, the party opposing an invalid claim should not be required to fully litigate any claims of its own:

> [i]f one hauled into Court as a defendant has a claim but the adversary plaintiff has not, the nominal defendant ought to be allowed to name the time and place to assert it. He should not be forced into court by a would-be plaintiff and forced to assert, or lose, a claim which he may choose not to litigate at all, or which he may choose to assert at another time and place. It is one thing to concentrate related litigation once it is properly precipitated. It is quite another thing for the Rules to compel the institution of litigation ... the Rules ought not to be construed in any such barratrous fashion.

*Lawhorn, supra*, 299 F.2d at 357. For all the foregoing reasons, the Court holds that Amtrak may proceed on its present course and is not precluded by Rule 13(a) from airing its claims.

### E. Res Judicata

In a final attempt to block a decision on the merits, Horn & Hardart argues that res judicata extinguishes all Amtrak's damage claims. Res judicata can only apply if the Court finds that the first adjudication ended in a final judgment, that the parties in the first suit were the same as those to be estopped in the second, and that the original court was of competent jurisdiction. *See Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4406 (1981). None of these prerequisites is challenged in the instant case. Additionally, for res judicata to operate, Amtrak's claims must be based on the "same cause of action" decided in *Horn & Hardart I*. *See Montana, supra*, 440 U.S. at 153, 99 S.Ct. at 973. In this jurisdiction, to determine whether claims arise out of the same cause of action, the Court must

> [give] weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*U.S. Industries, Inc. v. Blake Constr. Co., Inc.*, 765 F.2d 195, 205 (D.C.Cir.1985) (quoting Restatement (Second) of Judgments § 23(2) (1982)). Relying on this test, the Court holds that a damages claim arising out of Horn & Hardart's refusal to vacate its leased properties should have been raised in *Horn & Hardart I*. Once again, Amtrak does not contest this conclusion. Thus, if applicable, traditional res judicata bars Amtrak's petition for further relief.

Notwithstanding this conclusion, Amtrak continues to assert that its suit for further relief is actionable. The Railroad bases its argument on the premise that traditional res judicata principles do not apply to de-

---

**5.** Respondent's attempt to overcome this precedent by relying on *Law Offices of Jerris Leonard, P.C. v. Mideast Systems, Ltd.*, 111 F.R.D. 359 (D.D.C.1986), is unavailing. In *Mideast Systems*, the Court held that, where a party chose to default rather than answer a complaint, the requirement to raise a counterclaim pursuant to 13(a) remained effective. In such a case, there is a requirement to plead and a failure to so act. To the contrary, in the instant case, Amtrak was never required to plead.

claratory judgment actions. Petitioner's Opposition at 14. Amtrak's articulation of the declaratory judgment exception is over-broad. The Restatement of Judgments best states the proper scope of the exception and its rationale:

> [w]hen a plaintiff seeks *solely* declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action.

Restatement (Second) of Judgments § 33 Comment c (1982) (emphasis added); *see also* 22 Am.Jur.2d *Declaratory Judgments* § 102 (1965 & 1986 Supp.); Annot., 10 A.L. R.2d 782 (1950).[6] On its face, this exception is limited. The plaintiff in the original action cannot have sought any coercive relief there, otherwise the ordinary rules of res judicata apply. *See* Restatement (Second) of Judgments § 33 Comment d (1982). Purportedly, lawsuits requesting both declaratory and coercive forms of relief are different from normal lawsuits only in their declaratory label; accordingly, they deserve no special res judicata treatment. *Id.*

Because Horn & Hardart sought both declaratory and coercive relief in *Horn & Hardart I,* mechanical application of these rules would result in res judicata barring Amtrak's petition. In the usual case, this result would be correct, but the Court finds the instant case to be distinguishable and deserving of special treatment. Accordingly, the Court holds that petitioner is not estopped from prosecuting its claims.

The Court does not question the settled rule that a plaintiff who brings a declaratory judgment suit and requests no coercive relief may thereafter sue on those claims arising from the same cause of action that might have been raised in the first proceeding. *See* Restatement (Second) § 33 Comment c (1982). The Court acknowledges the propriety of this rule: prosecution of a declaratory judgment, without more, is not the equivalent of prosecuting a full-fledged claim and therefore should not merge or bar other claims the parties might have. *Id.*

However, the Court is not wholly receptive to the corollary to the rule, that whenever the plaintiff in a declaratory judgment suit demands both declaratory and coercive relief, res judicata applies fully to both plaintiff and defendant. The rule is properly applied to plaintiffs. Having initiated a lawsuit for declaratory *and* coercive relief, a plaintiff has set out to prosecute claims in the ordinary manner and consequently should be bound to raise all of them at one time. To allow otherwise would impermissibly allow a plaintiff to split his claims.

■ The same can be said of at least one species of defendant: those who, having received a complaint for declaratory and coercive relief, answer the complaint. Once an answer is filed a defendant's claims become ripe. Accordingly, Rule 13(a) requires the defendant to state all his claims arising out of the transaction or occurrence at issue. Though an involuntary party, defendant in this class is compelled by the Federal Rules of Civil Procedure to prosecute fully whatever claims he may have, otherwise he will lose them. Inasmuch, it does not seem unreasonable to prevent these defendants from raising new

---

**6.** Neither the Court nor the parties was able to locate valid federal precedent addressing this subject. Two federal cases touch the subject, but neither carries any weight. In *Cimasi v. City of Fenton,* 781 F.2d 116, 118–19 (8th Cir. 1986), the Restatement rule was adopted in a dissenting opinion. In *Mandarino v. Pollard,* 718 F.2d 845, 847–48 (7th Cir.1983), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984), the declaratory judgment exception to res judicata was discussed in dicta; the Court held that, because the argument was not raised in the district court, it could not be entertained on appeal. Thus, this seems the first federal case to confront directly the issue.

claims arising from the same transaction or occurrence.

■ The same cannot be said for another species of defendant: those who, having received a complaint mixing declaratory and coercive relief, do not and are not required to answer the complaint. The Court earlier found Amtrak to be such a defendant; for, pursuant to Rule 13(a), the Railroad was not required to file a counterclaim in *Horn & Hardart I. See, supra,* at 9–11. That holding was grounded on the belief that a defendant ought not to be expected to initiate full-scale litigation under unfavorable circumstances unless and until the plaintiff has proved that there is enough of a claim to warrant the defendant to answer. *See Lawhorn, supra,* 299 F.2d at 397. This policy is much the same as the Restatement's rule that stalls the operation of res judicata when a plaintiff brings a wholly declaratory suit. In both cases, res judicata should not function to bar or merge claims arising from the same transaction or occurrence that *could* have been brought, since in both cases there is a judicial recognition that full-fledged claims are not yet at issue. To rule otherwise would permit the requirements of res judicata, a judicially fashioned doctrine, to overturn Rule 13(a), federal law. This the Court cannot allow. Moreover, it is intolerable to grant plaintiffs in a declaratory judgment action the power to force defendants to raise all their actionable claims in that action, regardless of the merit of the plaintiff's claims simply because the plaintiff joined a request for coercive relief.

■ The modification of the Restatement rule may be summarized as follows: a defendant in an action for declaratory and coercive relief who succeeds in defeating plaintiff's claim on the basis of a Rule 12(b) motion should be viewed as not having asserted any independent claims and, as such, is not barred by res judicata from subsequently litigating claims arising from the same cause of action which could have been litigated in the original proceeding. Since Amtrak is such a defendant, its peti-

tion for further relief is not barred by res judicata.

## IV. MERITS

Because the arguments raised in Horn & Hardart's motion to dismiss are unconvincing, the Court now turns to the merits of Amtrak's motion for further relief. The petitioner seeks two kinds of damages: liquidated damages for Horn & Hardart's holdover at Penn Station during the litigation of *Horn & Hardart I* and attorney fees. These two claims will be evaluated separately

### A. *Liquidated Damages*

Liquidated damage provisions are valid in the District of Columbia, *see Burns v. Hanover Ins. Co.,* 454 A.2d 325, 327 (D.C. 1982), unless found to constitute a penalty—an agreement "to pay [a] fixed, sum[ ] plainly without reasonable relation to any probable damage which may follow a breach...." *Id.* (quoting *Davy v. Crawford,* 147 F.2d 574, 575 (D.C.Cir.1945)). The question posed to the Court is whether the liquidated damages clauses in the Amtrak-Horn & Hardart leases are valid.

The three leases which once granted Horn & Hardart space at the Penn Station all have a common end-of-term hold-over clause:

[t]he parties recognize and agree that the damage to Lessor resulting from any failure by Lessee timely to surrender possession of the demised premises as aforesaid will be extremely substantial, will exceed the amount of monthly rent theretofore payable, and will be impossible of accurate measurement. Lessee therefore agrees that *if possession of the demised premises is not surrendered to the Lessor within seven days of the date of expiration or sooner termination* of the term of this lease, then *Lessee agrees to pay Lessor as liquidated damages* for each month and for each portion of any month during which Lessee holds over in the premises after expiration or termination of the term of this lease, *a sum equal to three times the average rent*

and additional rent which was payable per month under this lease during the last six months of the term thereof.

·Lease 31–01–021 ¶ 16; lease 31–01–022 ¶ 17; lease 31–01–023 ¶ 16 (emphasis added). Horn & Hardart disputes neither the validity nor the plain meaning of this provision. Rather, respondent maintains that the contract is modified by D.C.Code Ann. § 45–1407 (1981) ("*Refusal to surrender possession; double rent*"), which provides, in relevant part, that:

> [i]f the *tenant*, after having given notice of *his* intention to quit, as aforesaid, shall refuse, *without reasonable excuse*, to surrender possession ... he shall be liable to the landlord for rent *at double the rate of rent* payable ... for all the time the tenant shall so wrongfully hold over....

D.C.Code Ann. § 45–1407 (1981) (emphasis added). Based on this statute's language, respondent urges that Amtrak must prove that hold-over was "without reasonable excuse" in order to prevail. Respondent further argues that even if Horn & Hardart can offer no reasonable excuse, the maximum damages recoverable by Amtrak is double rent.

The Court is not convinced that section 1407 controls this controversy. The provision has never been explicated by the District of Columbia courts. *Cf. Paton v. Rose*, 205 A.2d 609, (D.C.1964). There is first some question whether the provision is even relevant to the instant dispute. The statute ostensibly applies to only that situation where the *tenant* has "given notice of *his* intention to quit." *Id.* (emphasis added). It was the landlord that *gave* notice to quit in this case, not the tenant. Regardless, the language in section 1407 is not broad enough to embrace these parties. Section 1407 is a statutory remedy that may supplement but may not supplant the intentions of private parties to a contract. *Cf. Mendes v. Johnson*, 389 A.2d 781, 786 (D.C.1978) (en banc) (statutory remedy not controlling unless declared in express terms or by necessary implication). There is no indication from the language in the statute that it was intended to preempt this private contract.

As such the Court turns to the provisions in the leases. The language is clear. Horn & Hardart breached the agreement when it failed to surrender possession of the demised premises "within seven days of the date of ... sooner termination of the term of this lease." Petitioner's Motion for Further Relief at 12. There is no requirement in the leases that hold-over must be wrongful. Moreover, the Court finds the triple rent provision legitimate. Triple rent does not, without more, constitute a penalty. The leases state that damages to Amtrak caused by hold-over would likely be "extremely substantial." In fact, Amtrak's manager in charge of the Penn Station renovation project estimated the damages caused by Horn & Hardart to exceed $1 million. *See* Declaration of Bruce M. Bourque at ¶ 3. Other jurisdictions have approved even more onerous clauses. *See, e.g., Johnson v. Fuller*, 190 Conn. 552, 461 A.2d 988, 989 (1983); *Lama v. Manale*, 218 La. 511, 50 So.2d 15, 17 (1950).

In calculating the damages owed to Amtrak, the Court finds the average monthly rent for the last six months of the lease to be $33,501.82. *See* Declaration of A.C. Palerino, Jr., Manager of Amtrak's Real Estate Accounts, at 2. This figure is not disputed by Horn & Hardart. Three times that rent sets the monthly liquidated damages at $100,505.46. The Court finds that Horn & Hardart held over for five months, from March of 1985 until August of 1985.[7] The total damages owed for this period thus equals $502,527.30. This figure must be reduced by $167,510, the amount of rent actually paid by Horn & Hardart to Amtrak during the hold-over period. Respondent's Motion to Dismiss at 29 n. 19. Horn & Hardart is thus ordered to pay to Amtrak the sum of $335,017.30.

---

**7.** In so holding, the Court rejects Amtrak's attempt to collect damages for the month of August, even though Horn & Hardart vacated the premises on August 5, 1985.

This figure is not an exorbitant one, especially in light of the $180,000 payment made by Amtrak to Horn & Hardart in compensation for its early termination of the Penn Station leases.

### B. *Attorney Fees*

Due to Horn & Hardart's breach of its obligation to vacate Amtrak's properties, Amtrak also incurred significant legal expenses defending the actions before this Court, the United States Court of Appeals for the District of Columbia Circuit, and prosecuting the three eviction actions before the New York landlord-tenant court. Amtrak claims that it is entitled to recover attorney fees and costs for these actions. The governing leases speak to this issue:

> *[i]f Lessee shall default* in the observance or performance of any term or covenant on Lessee's part to be observed or performed under or by virtue of any of the terms of provisions in any article of this lease, ... *and if Lessor make any expenditures* or incur any obligations for the payment of money *in connection therewith, including but not limited to attorney fees in instituting, prosecuting or defending any action* or proceeding, *such sums* paid or obligations incurred *with interest and costs* shall be deemed to be additional rent hereunder and shall be paid by Lessee to Lessor within five (5) days of rendition of any bill or statement to Lessee therefor.

Lease 31–01–021 ¶ 16; lease 31–01–022 ¶ 17; lease 31–01–023 ¶ 16 (emphasis added).

Horn & Hardart takes the position that this provision is inapplicable since there has been no "default." According to Horn & Hardart, the term default "embraces the idea of dishonesty, and a wrongful act ..., or an act discreditable to one's profession." Respondent's Motion to Dismiss at 31 (quoting Black's Law Dictionary 376 (5th ed. 1979)).

■ This argument is frivolous. Respondent's definition of "default" constitutes a most attenuated usage—the last definition in a long list. The more common definition of default is "a failure; [a]n omission of that which ought to be done; [s]pecifically, the omission or *failure to perform a legal duty....*" Black's Law Dictionary 505 (4th ed. 1951) (emphasis added). Moreover, the Horn & Hardart leases make it clear that a failure to perform contractual obligations constitutes a default.[8] Accordingly, the respondent's construction cannot stand.

■ Turning to the leases themselves, the Court finds that the conditions for imposing attorney fees and costs are satisfied. Lessee Horn & Hardart did "default" and Lessor Amtrak did make expenditures for attorney fees and costs "in connection therewith." Amtrak has requested $52,562.02 for attorney fees and expenses accumulated to date. *See* Declaration of John C. Morland, Associate General Counsel for Amtrak, at ¶ 9. Horn & Hardart has not challenged the propriety of this figure, and the Court finds the amount claimed to be wholly reasonable. As such the Court

---

**8.** There is a paragraph in the leases entitled "DEFAULT." That provision states the following:

> [i]f Lessee defaults in fulfilling any of the covenants of this lease, ... or if the demised premises become vacant or deserted, then in any one or more of such events upon Lessor serving a written fifteen (15) days' notice upon Lessee specifying the nature of said default and upon the expiration of said fifteen (15) days, if Lessee shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of such a nature that the same cannot be completely cured or remedied within said fifteen

(15) day period, and if Lessee shall not have diligently commenced during such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Lessor may serve a written ten (10) days' notice of termination of this lease upon Lessee....

Lease 31–01–021 ¶ 14(1); Lease 31–01–022 ¶ 15(1); Lease 31–01–023 ¶ 14(1). The language of this provision does not support respondent's theory that breach must be wrongful to constitute a default. To the contrary, default is herein represented to be a neutral act.

finds Amtrak entitled to the $52,562.02 claimed plus the reasonable expenses associated with this motion.

## ORDER

Upon consideration of the petition of National Railroad Passenger Corporation for further relief, Horn & Hardart's motion to dismiss, oppositions thereto, oral argument, and the entire record herein, and for the reasons stated in the accompanying memorandum, it is by the Court this 23rd day of April, 1987,

ORDERED that Horn & Hardart's motion to dismiss be, and hereby is, denied; and it is further

ORDERED that the petition of National Railroad Passenger Corporation for further relief be, and hereby is, granted to the extent herein provided; and it is further

ORDERED that The Horn & Hardart Company shall pay damages to the National Railroad Passenger Corporation in the amount of $335,017.30 for its hold-over at the Pennsylvania Station properties and $52,562.02 for attorney fees and costs associated with the removal of Horn & Hardart therefrom; and it is further

ORDERED that, within thirty (30) days after the filing of this order, the National Railroad Passenger Corporation shall submit an affidavit setting out its reasonable attorney fees and costs associated with the prosecution of this petition for further relief. Any opposition should follow within the time prescribed by the Federal Rules of Civil Procedure.