OPINION AND ORDER
 

 ROBERT P. PATTERSON, Jr., District Judge.
 

 All of the defendants
 
 [1]
 
 and the plaintiff Mutual Fire, Marine and Inland Insurance Company (“Mutual Fire”) have moved to dismiss the intervenor complaint of Bar-clays Business Credit, Inc. (“Barclays”). The motions raise three issues: (1) whether Barclays’ intervention destroys this Court’s diversity jurisdiction, (2) whether the doctrine of
 
 res judicata
 
 precludes Barclays from intervening in this case, and (3) whether Barclays’ cross-claims against Mutual Fire are prohibited by a Rehabilitation Order issued by the Pennsylvania Insurance Commissioner.
 

 
 *480
 
 I. FACTS
 

 Barclays alleges the following facts in its intervenor complaint. In 1983, the defendants (and other limited partners) purchased a limited partnership interest in the Great Western Energy, Ltd. 1983-11 Oil & Gas Program Limited Partnership (the “Partnership”), pursuant to various subscription and limited partnership agreements and documents executed by each defendant. The purchase price was payable partly in cash and the balance by executing a series of promissory notes (the “Promissory Notes”) payable to the Partnership. The Promissory Notes were secured by a written Surety Bond issued by Mutual Fire in favor of the Partnership and Barclays (the partnership’s permitted assignee) in the aggregate sum of $3,934,992, pursuant to which Mutual Fire agreed that if any of the limited partners defaulted in paying any of the Promissory Notes, Mutual Fire would pay all amounts due.
 

 In late December, 1983, Barclays loaned money to the Partnership pursuant to a written Loan and security Agreement. At the loan closing, the Promissory Notes of each of the Limited Partners (including the defendants) and the Surety Bond of Mutual Fire securing the payment of the Promissory Notes were assigned, transferred and/or delivered to Barclays.
 

 From December, 1983 until approximately March, 1986, Barclays received the payments due with respect to the Promissory Notes, either from the individual Limited Partners or, in the case of a defaulting Limited Partner, from Mutual Fire pursuant to the Surety Bond issued by Mutual.
 

 Beginning approximately March 31,1986, however, Mutual Fire imposed a “temporary moratorium” and stopped making any payments to Barclays on the accounts of defaulting Limited Partners. The first post-moratorium payment was due from Mutual Fire in June, 1986, and Mutual Fire did not make that payment or any other of the payments which have subsequently come due. Barclays claims that approximately $2,000,000 is presently due and owing from various Limited Partners with respect to their Promissory Notes secured by the Mutual Fire Surety Bond.
 

 Mutual Fire brought the present action against the Limited Partners who, prior to March, 1986, had defaulted in paying monies due Barclays with respect to their Promissory Notes and thereby caused Mutual Fire to become liable to Barclays under the Surety Bond. Mutual Fire seeks to recover from the defendants those amounts it has actually paid to
 
 Barclays
 
 — i.e., those that came due prior to March 31, 1986— plus those amounts owed by the defendants to Barclays which Mutual Fire has not yet paid.
 

 Barclays was granted leave to serve an intervenor complaint on May 18,1989. The Court permitted all parties to move against Barclays’ intervenor complaint by June 30, 1989, which all defendants have done.
 

 The intervenor complaint contains four claims for relief. The first claim is against the defendants for their alleged failure to make payments on certain promissory notes. The second claim is against Mutual Fire to recover sums Mutual Fire allegedly owes to Barclays based on the Surety Bond it issued to cover the defendants’ unpaid promissory notes. The third claim seeks a declaratory judgment that Barclays’ right to recover from defendants is superior to Mutual Fire's right to recovery against defendants. Pursuant to such declaration, Barclays seeks to impose a trust on any recovery Mutual Fire obtains here. Finally, the fourth claim seeks a declaration that Barclays allegedly is the owner of certain purported collateral Mutual Fire allegedly obtained from the defendants.
 

 II. DISCUSSION
 

 1. Subject Matter Jurisdiction
 

 Both groups of defendants have moved to dismiss Barclays’ intervenor complaint on the grounds that Barclays’ intervention in this action destroys this court’s diversity jurisdiction.
 

 Barclays is incorporated in Connecticut and has its principal place of business in
 
 *481
 
 that state.
 
 [2]
 
 At least one of the defendants, John L. Gallagher, is also a citizen of that state. Unless the Court has ancillary jurisdiction over Barclays, therefore, there is no complete diversity and the intervenor complaint must be dismissed.
 

 The parties agree that, under the general rule, when the court’s jurisdictional requirements are met with regard to the original parties, a party who subsequently intervenes “as of right” pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure need not have an independent ground of federal jurisdiction, and will not destroy diversity regardless of its citizenship.
 
 See Moore’s Federal Practice,
 
 vol. 3-B ¶ 24.18(1). Where the intervention is “permissive,” however, an independent basis of jurisdiction must be shown.
 
 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d,
 
 Vol. 7C, § 1917, pp. 464-466. The Court did not specify, when it granted Barclays’ motion to intervene, whether Barclays’ intervention was as of right or permissive, but analysis of the facts and law leads the Court to the conclusion that the intervention must be considered as of right.
 

 Under Rule 24(a)(2), intervention may be had as of right
 

 when the applicant claims an interest in the property or transaction which is the subject matter of the action and the applicant is so situated the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.
 

 Here, Barclays is claiming it is entitled to payment of the sums stated in the Promissory Notes, and therefore “claims an interest in the property or transaction which is the subject matter” of Mutual Fire’s action. Furthermore, because of Mutual Fire’s financial difficulties, the disposition of Mutual Fire’s action may impair Barclays’ rights by forcing Barclays to compete with Mutual Fire’s other creditors. Finally, neither Mutual Fire nor the defendants will adequately represent Barclays’ interest; Mutual Fire has taken a hostile position towards Barclays, asserting a right to monies Bar-clays claims belong to it. Therefore, Bar-clays intervention in this matter is as of right under Rule 24(a)(2).
 
 See e.g., Kozak v. Wells,
 
 278 F.2d 104 (8th Cir.1960) (Blackmun, C.J.).
 

 Accordingly, under the general rule, Barclays need not show independent jurisdictional grounds; it falls within this Court’s ancillary jurisdiction. The defendants, however, claim that an exception to the general rule applies here. Under the exception, a party whose presence was indispensable to the adjudication of the matter between the original parties must have an independent basis for jurisdiction even when it intervenes as of right. Whether this Court has ancillary jurisdiction over Barclays’ claims, then, turns on whether Barclays was an indispensable party under Rule 19 of the Federal Rules of Civil Procedure.
 

 The policy behind the exception to the general rule is to prevent collusion between parties to avoid jurisdictional requirements. If the rule were otherwise, the requirement of complete diversity could be avoided by having one party bring an action while the indispensable party waits and then intervenes as of right under the court’s ancillary jurisdiction. To avoid this collusive circumvention of jurisdictional requirements, a party who was indispensable to the action at the time it was brought is required to show that it could have invoked the court’s jurisdiction from the beginning.
 
 New York State Ass’n for Retarded Children v. Carey,
 
 438 F.Supp. 440, 445 n. 4 (E.D.N.Y.1977) (“If the court would have had no jurisdiction over the indispensable party at the commencement of the suit, the jurisdictional requirements cannot be avoided by adding him later in the proceedings.”).
 

 The Supreme Court has held that while both an insured and a partially subrogated insurer are “necessary” parties to an ac
 
 *482
 
 tion, they are not “indispensable” parties under Rule 19.
 
 United States v. Aetna Casualty & Surety Co.,
 
 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949);
 
 Arkwright-Boston Mfrs. Mutual Insurance Co. v. City of New York,
 
 762 F.2d 205 (2d Cir 1985). Here, Barclays is alleging that Mutual Fire is a partially subrogated surety and Barclays is the insured. As a result, Barclays is not indispensable to Mutual Fire’s action against the defendants.
 
 See Glen Falls Insurance Co. v. Cook Brothers, Inc.,
 
 23 F.R.D. 269 (S.D. Indiana 1959).
 

 Additionally, it appears that at the time Mutual Fire brought the present action, Barclays did not yet have any claim against the defendants; all payments to Barclays were current. Under the procedure established in the Bond, Barclays was not entitled to accelerate the payments and bring an action with respect to future installments until mid-June, 1986. Thus, when Mutual Fire brought suit against the defendants on April 17, 1986, Barclays could not itself have asserted claims against the defendants. Therefore, Barclays could hardly be said to have been an indispensable party at that time.
 

 Since Barclays was not an indispensable party at the time of Mutual Fire’s original suit, its intervention as of right does not affect this Court’s subject matter jurisdiction, and the defendants’ motions to dismiss the intervenor complaint on this ground is denied.
 

 2.
 
 Res Judicata
 

 The Texas Defendants contend that Bar-clays’ claims against them are barred by the doctrine of
 
 res judicata,
 
 on the grounds that those claims should have been raised in a related action,
 
 Huntington v. Great Western Energy Corp.,
 
 86 Civ. 3320 (LBS) (S.D.N.Y.), in which many of the present defendants were plaintiffs in an action against various defendants, including Barclays.
 
 [3]
 
 That action, brought on April 25, 1986, was dismissed with prejudice on January 4, 1988.
 

 A party is generally precluded from bringing a claim in a subsequent action that it could have raised in an earlier action.
 
 Collard v. Incorporated Village of Flower Hill,
 
 759 F.2d 205 (2d Cir.),
 
 cert. denied,
 
 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). For the reasons described below, however, the procedural stage at which Barclays would be required to file an answer was never reached, and therefore the occasion never arose for it to bring any counterclaims. As a result, Barclays is not barred from raising the claims it raises here.
 
 United States v. Snider,
 
 779 F.2d 1151 (6th Cir.1985).
 

 Although the
 
 Huntington
 
 action was not dismissed until a year and a half after it was brought, Barclays never answered the complaint. Barclays’ first response after the plaintiffs’ complaint was filed was to file a motion to dismiss the complaint. When the plaintiffs filed an amended complaint, Barclays moved to dismiss it also. Later, counsel for plaintiffs was disqualified, and despite an extension of time to obtain new counsel, the plaintiffs did not respond to the motions to dismiss. In August, 1987, Judge Sand “so ordered” a stipulation between the parties which dismissed the
 
 Huntington
 
 action with leave to file new complaints within 90 days of August 20, 1987. Judge Sand thereafter granted the plaintiffs an extension of time to January 19, 1988 to file new complaints, upon the condition that any plaintiff wishing to proceed must appear by December 18,1987, and enter a written agreement, on a
 
 pro rata
 
 basis with the other plaintiffs, to post a $225,000 bond to cover any Rule 11 sanctions which might ultimately be imposed on plaintiffs because of the delay. None of the plaintiffs complied with these conditions or filed a new complaint, and on January 4, 1988, Judge Sand ordered that the complaint be dismissed with prejudice. Thus, the
 
 Huntington
 
 action ended before Barclays was ever required to file a pleading.
 

 The Sixth Circuit ruled in a similar case,
 
 United States v. Snider, supra,
 
 that because a responsive pleading in the first action was never required, the defendant therein was not barred from bringing a second action asserting those claims that
 
 *483
 
 would have been compulsory counterclaims in the first action. 779 F.2d at 1157.
 
 See also Lawhorn v. Atlantic Refining Co.,
 
 299 F.2d 353 (5th Cir.1962) (defendant who successfully moved to dismiss first action before required to answer complaint was not precluded from asserting claims in second action). To hold otherwise would inappropriately punish a litigant for interposing a successful motion to dismiss before answering by stripping it of the right to bring claims that, in hindsight, could or should have been brought had the motion to dismiss failed. This would not serve the policy underlying the doctrines of
 
 res judicata
 
 and collateral estoppel: to conserve judicial resources and protect litigants from the expense of multiple lawsuits. Accordingly, this Court believes the Second Circuit would follow
 
 United States v. Snider,
 
 and the defendants’ motion to dismiss the intervenor complaint on the grounds of
 
 res judicata
 
 is denied.
 

 3. The Pennsylvania Rehabilitation Order
 

 On or about June 13, 1986, the Pennsylvania Insurance Commissioner issued an order placing Mutual Fire under his supervision and suspending Mutual Fire’s business for 90 days due to Mutual Fire’s hazardous financial condition. On or about September 12, 1986, upon expiration of the June 13, 1986 Order of Supervision, the Pennsylvania Insurance Commissioner issued an order of suspension, suspending indefinitely Mutual Fire’s business. On or about December 8, 1986, the Commonwealth Court of Pennsylvania entered an Order of Rehabilitation appointing the Pennsylvania Insurance Commissioner as Rehabilitator of Mutual Fire. The Order of Rehabilitation, in pertinent part, provides:
 

 No action at law or equity, except the
 
 Mutual Fire Company v. NORAD and GTE
 
 federal arbitration hearing, shall be commenced or prosecuted nor shall any judgment be entered against nor shall any execution or attachment be issued or prosecuted against Mutual Fire and/or the Rehabilitator until further notice of this Court.
 

 Order of Rehabilitation, at 2. Additionally, the Order of Rehabilitation provides that the Suspension Order is to continue in full force. Thus, Mutual Fire claims that it is prohibited from transferring any of its property or assets without the prior consent of the Pennsylvania Insurance Department. Mutual Fire asserts that Barclays’ cross-claims are an attempt to obtain an unlawful preference with respect to Mutual’s assets. Barclays claims that it is merely trying to recover funds that belong to it but which Mutual Fire is attempting to obtain so that Barclays will be forced to compete with Mutual Fire’s other creditors.
 

 Mutual Fire relies on Judge Weinfeld’s decision in
 
 Twin City Bank v. Mutual Fire Marine & Inland Ins. Co.,
 
 646 F.Supp. 1139 (S.D.N.Y.1986),
 
 aff'd,
 
 812 F.2d 713 (1987), in which the court held that the Suspension Order
 
 [4]
 
 precluded the plaintiff from executing a judgment against Mutual Fire it had obtained in Arkansas. Judge Weinfeld’s analysis of the law led him to conclude that the Pennsylvania Suspension Order was entitled to comity in New York, saying “New York’s policy of respecting, where possible, the law of other states regarding delinquency proceedings, should be enforced by issuing a stay” of execution of the judgment.
 
 Id.
 
 at 1142.
 

 Twin City,
 
 however, unlike this case, involved a plaintiff seeking to execute a judgment against Mutual Fire.
 
 Twin City,
 
 then, involved a direct threat to Mutual Fire’s assets and therefore to its rehabilitation. Judge Weinfeld noted the danger of “impairing] Mutual Fire’s chances of rehabilitation” if execution of the judgement were not stayed. In this case, however, Barclays is attempting to intervene to protect what it claims are its rights to payments from the defendants which Mutual Fire is also seeking to collect in its role as surety to Barclays. Failure to issue a stay in this case would not create the same
 
 *484
 
 threat to Mutual Fire’s assets as it would have in
 
 Twin City.
 

 Also unlike
 
 Twin City,
 
 issuance of a stay in this case would allow Mutual Fire to use the Rehabilitation Order as a shield to protect itself while it sued for assets to which Barclays clearly has some claim. Without deciding the merits of the parties’ claims, this Court notes that Barclays argues that its claim is superior to Mutual Fire’s, in that Mutual Fire does not become subrogated to Barclays’ claims until it has made Barclays whole. Although Mutual Fire disputes this reading of the law as it applies to this case, it would be manifestly unjust to allow Mutual Fire to take advantage of its being the subject of three year old delinquency proceedings to prevent Barclays from establishing that its claim is superior. The threat to Mutual Fire's rehabilitation which was the concern of the court in
 
 Twin City
 
 will only arise when and if Barclays gets a judgment against Mutual Fire and seeks to enforce it. In the meantime, it would not be in the interests of judicial economy to allow Mutual Fire’s claim to go forward without at the same time adjudicating the rights of Barclays. Issuance of a stay will only lead to piecemeal litigation and the waste of the courts’ and parties’ resources that accompanies it.
 

 Thus, the interest in judicial economy and the interest in protecting Mutual Fire’s rehabilitation proceedings can both be served if a stay is not issued at this time and the issue is reserved for when Barclays is seeking to execute a judgment against Mutual Fire. This decision is also fully in accord with
 
 Twin City.
 

 Accordingly, Mutual Fire’s motion to stay the cross-claims against it in the intervenor complaint is denied.
 

 III. CONCLUSION
 

 For the foregoing reasons, the defendants’ and plaintiff’s motions to dismiss Barclays’ intervenor complaint are denied.
 

 SO ORDERED.
 

 [1]
 

 . The parties refer to the defendants as two separate groups: the Texas Defendants and the Non-Texas Defendants. The two groups have different counsel. The Texas Defendants are Jack S. Countryman, Rodney L. Dockery, Marketing Communications Graphics, Inc., Peleo, Inc., and Venture Properties, Inc. The Non-Texas Defendants are Adler, Bendall, Berkowitz, Blankstein, Braverman, Cohen, Dispigno, Gallagher, Griffith, Gurrell, Liebowitz, Magier, Parry, Reynolds and Salig.
 

 [2]
 

 .
 
 See
 
 Affidavit of J.D. Smith. The defendants allege, on information and belief, that Barclays’ principal place of business is New York. The outcome of these motions is no different if they are correct.
 

 [3]
 

 . Barclays sets forth in its brief a description of the history of the
 
 Huntington
 
 action. Since the other parties do not dispute Barclays’ version of the facts, the Court will accept them as true.
 

 [4]
 

 . At the time of the
 
 Twin City
 
 decision, the Rehabilitation Order had not yet been issued. The Suspension Order contained similar language stating that "no actions at law or equity shall be commenced or prosecuted nor shall any judgment be entered against nor shall any execution or attachment be issued or prosecuted against Mutual Fire or against its property in any Court of this Commonwealth."