990 F.2d 780
 Monmohan BHATLA; Shabnam Bhatla; Larry Ayrers; Anthony
Read; John E. Barden; Elizabeth Ann Barden; James
Sourwine; Annette Sourwine; Frank Binder; Edward Collier;
Jeanne Collier; Joseph Curcio; Mary Curcio; John A.
Maxin; Patricia Maxin; Frances Maxin; Judith Maxin;
Samuel H. Depew, Marilyn Depew (d/b/a Depew Investment
Group); Glenn Dolfi; Martha F. Dolfi; John Driscoll and
Eileen M. Driscoll; Ronald Elin; Susan M. Elin; Jack
Farls (d/b/a J. Foster Associates); George Fenzl; Roxana
Fenzl; Gregg Fogg; James P. Grinham; Keith R. Holbrook;
and Richard W. Oliver (d/b/a Quadco); William Fox and Myra
Fox; Harvey Gutman; Beverly Gutman; Martin Karasick;
Joan Karasick; Martin Gang; Judith Gang; Mark Hayden;
Greg Hayden; Mike D'Avanzo; Randy Vilford; Joseph Hanzel;
Judy M. Bedell; Frank Hryshko; Michael Hettleman;
Barbara Hettleman; Thomas L. Hoivik; Judith Lisa Hoivik;
Edward Lewis; Sally Lewis; Donald Peterson; Rebecca
Peterson; Marcelo Politi; Mariana Politi; Raul Truffat;
Soffia Truffat; Dennis Richardson; Virginia Richardson;
Ferdinand C. Rodriguez; Maelecora Rodriguez; Victor C.
Rivera; Milagros G. Rivera; Gordon Seccombe; Joan
Seccombe; Raymond Smith; Joy Mottel; Donald Swenson;
Elizabeth Swenson; Michael Ternisky; Jerry Totten; Ellen
Totten; William Walker, Appellants
v.
U.S. CAPITAL CORPORATION; Resort Development Corporation
(a/k/a Resort Investment Corporation); Capital Acceptance
Corporation; First Capital Finance Corporation; U.S.
Capital Mortgage Corporation; Mellon Financial Services
Corporation No. 7 (formerly Carruth Mortgage Corporation);
Mellon Financial Services Corporation No. 11; Mellon
Financial Services Corporation No. 1 (d/b/a Mellon National
Mortgage Group and National Mortgage Group); Mellon Bank
N.A.; Billy J. Bobo; Donald J. Tomlin; Patrick L. Tomlin;
Robert E. Sease; Richard W. Payton and Jeffrey B. Wheeler.
MELLON BANK, N.A.
v.
Marcelo PASQUALIS-POLITI and Mariana Pasqualis-Politi, Appellants.
MELLON BANK, N.A.
v.
John BARDEN and Elizabeth A. Barden and James Sourwine and
Annette Sourwine, Appellants.
MELLON BANK, N.A.
v.
John A. DRISCOLL and Eileen M. Driscoll, Appellants.
MELLON BANK, N.A.
v.
Donald M. SWENSON and Elizabeth M. Swenson, Appellants.
MELLON BANK, N.A.
v.
James B. GRINHAM, Gregg Fogg, Keith R. Holbrook and Richard
W. Oliver, Appellants.
MELLON BANK, N.A.
v.
Martin KARASICK and John Karasick and Harvey M. Gutman and
Beverly J. Gutman, Appellants.
MELLON BANK, N.A.
v.
Martin KARASICK and John Karasick and Harvey M. Gutman and
Beverly J. Gutman and Martin L. Gang and Judith
Gang, Appellants.
MELLON BANK, N.A.
v.
Raul E. TRUFFAT and Sofia A. Truffat and Marcelo
Pasqualis-Politi and Mariana Pasqualis-Politi, Appellants.
MELLON BANK, N.A.
v.
Michael K. HETTLEMAN and Barbara G. Hettleman, Appellants.
MELLON BANK, N.A.
v.
Edward M. COLLIER and Jeanne L. Collier, Appellants.
MELLON BANK, N.A.
v.
Raul E. TRUFFAT and Sofia A. Truffat, Appellants.
MELLON BANK, N.A.
v.
Frank M. BINDER, Appellant.
MELLON BANK, N.A.
v.
Edward G. LEWIS and Sally E. Lewis, Appellants.
MELLON BANK, N.A.
v.
William A. WALKER, Jerry Totten, a/k/a Jerry D. Totten and
Ellen Totten, a/k/a Ellen M. Totten, Appellants.
MELLON BANK, N.A.
v.
Joseph A. HANZEL, Jr. and Judy M. Bedell, Appellants.
MELLON BANK, N.A.
v.
William Z. FOX and Myra E. Fox, Appellants.
MELLON BANK, N.A.
v.
Ferdinand C. RODRIGUEZ, Maelecora P. Rodriguez, Victor C.
Rivera and Milagres Rivera, Appellants.
 Nos. 92-3417, 92-3555.
 United States Court of Appeals,
Third Circuit.
 Argued March 3, 1993.
Decided April 12, 1993.
 
 Donald F. Mintmire (argued), Vaness M. Moore, Mintmire, Alagia, Day, Trautwein & Smith, Palm Beach, FL, for appellants.
 Ira S. Lefton (argued), Henry F. Reichner, Reed Smith Shaw & McClay, Philadelphia, PA, for Mellon Bank, N.A.
 Eric Breslin (argued), Hannoch Weisman, A Professional Corp., Roseland, NJ, for appellees Billy J. Bobo, Donald J. Tomlin, Patrick L. Tomlin, Robert E. Sease, Richard W. Payton, and Jeffrey B. Wheeler.
 Before BECKER and GREENBERG, Circuit Judges, and ROBINSON, District Judge.*
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 I.
 BACKGROUND
 
 1
 These cases, consolidated on appeal, arise in the aftermath of purchases of condominium units in Phase I of a development known as the Blue Knob Ski and Country Club in Bedford County, Pennsylvania (Development).[1] Some of the purchasers of these units contend, inter alia, that they were fraudulently induced into buying these units based on misrepresentations made to them by sales persons of Resort Investment Corporation (now known as Resort Development Corporation). These purchasers appeal from judgments and orders in two separate district court cases, both of which involved Mellon Bank. While there were other purchasers in the Development not involved in this litigation, as a matter of convenience we will refer to the appellants as the purchasers.[2] Mellon has a twofold involvement in these disputes. First, pursuant to a Commitment Letter of August 12, 1982, in which it agreed to lend Resort slightly over $3 million, it made loans for use in the acquisition of the land and the construction of part of the Development. Second, Mellon became the indenture trustee for bonds secured at least in part by the notes and mortgages used to purchase the Phase I condominium units.
 
 
 2
 In the first case, Bhatla v. Resort Development Corp., No. 92-3417 (Bhatla), the purchasers sued Resort, Mellon, and certain other entities and individuals we describe below for losses suffered as a result of the alleged fraud. In the second case, Mellon Bank, N.A. v. Pasqualis-Politi, No. 92-3555 (Mellon Bank), Mellon sued some of the purchasers, seeking judgments on the notes and foreclosures on the mortgages used to finance their purchases of the condominium units. We have consolidated the cases on appeal because they involve related factual and legal issues.
 
 A. Factual History
 
 3
 In the early 1980s, Resort sought to build a condominium development on a 32-acre parcel of land in the Allegheny Mountains of Western Pennsylvania. The initial Public Offering Statement, dated November 25, 1981, stated that the Development would be built in four phases. Phase I was to consist of 96 units, 72 two-bedroom units and 24 one-bedroom units. Phase II was to consist of 54 two-bedroom units. The make-up of the other two phases is not relevant to these appeals. The purchasers all acquired units in Phase I.
 
 
 4
 According to the purchasers, in marketing the Development, Resort's sales persons made several material misrepresentations, the principal ones being (1) that Phase II would be built even though the initial Public Offering Statement stated that Phase II "Need Not Be Built" and (2) that the developer had arranged for a major hotel chain to handle the rentals of the units. Furthermore, Resort's sales persons allegedly told prospective purchasers that each phase of the development would be marketed at higher prices than the earlier phases, thereby enhancing the investment value to Phase I purchasers by enabling them to get in on the ground floor.
 
 
 5
 Because sales in Phase I were slower than expected, construction did not begin until the summer of 1982, when enough purchase agreements were signed to trigger the financing provision in the Mellon loan. This delay led to the division of Phase I into Phase IA and Phase IB, which was accomplished by an amendment, dated November 16, 1982, to the Public Offering Statement. Significantly, from the purchasers' point of view, the amended statement made no mention of any change in plans for Phase II, though it continued to indicate that Phase II "Need Not Be Built." The amended statement, which was mailed to prospective purchasers, stated that they had 15 days from its receipt to cancel their purchase agreements. The purchasers settled on their purchases between December 4, 1982, and February 15, 1983.
 
 
 6
 According to the purchasers, prior to the mailing of the amended public offering statement, Resort knew that Phase II as described in the initial public offering statement would not be built. The purchasers assert that Resort had decided instead to build 72 efficiency-style units to be known as the Blue Knob Ski and Country Club Resort Conference Centre. The construction of these lower-priced units allegedly eroded the value of the Phase I units. The purchasers maintain that had they known about this change in plans for Phase II, they would have exercised their rights to cancel their purchase agreements.
 
 B. Procedural History
 1. The Bhatla action
 
 7
 In December 1986, the purchasers sued: (1) U.S. Capital Corporation, Resort (a subsidiary of U.S. Capital), and three other subsidiaries of U.S. Capital, Capital Acceptance Corporation, U.S. Capital Mortgage Corporation, and First Capital Finance Corporation (together called herein U.S. Capital Corporate Defendants); (2) Mellon Bank and several of its subsidiaries (Mellon Defendants); and (3) several persons who worked for U.S. Capital and/or one of its subsidiaries (U.S. Capital Individual Defendants). The purchasers sought to recover damages for losses that resulted from their purchases of the condominium units. They filed an amended complaint on January 13, 1987, and a second amended complaint on August 20, 1987. The second amended complaint sought relief on four counts: violations of RICO, common law fraud and conspiracy, breach of contract, and rescission of contracts.
 
 
 8
 The defendants filed motions to dismiss. In resolving these motions the district court considered matters outside the pleadings, thus converting them into motions for summary judgments pursuant to Fed.R.Civ.P. 12(b). On August 3, 1989, the district court partially granted these motions. In particular, the court granted summary judgment to the defendants on all claims except the breach of contract claim against Resort and the 18 U.S.C. § 1962(c) and (d) RICO claims against the U.S. Capital Corporate and Individual Defendants. See 720 F.Supp. 501 (W.D.Pa.1989). The court dismissed the RICO claims against the Mellon Defendants because the purchasers had not complied with an order directing them to set forth with particularity the alleged acts of fraud committed by each defendant, and because the complaint failed to satisfy the particularity requirement of Fed.R.Civ.P. 9(b). 720 F.Supp. at 510. The court granted summary judgment in favor of all the defendants on the fraud claims, finding that they were barred by Pennsylvania's two-year statute of limitations. Id. at 512. Finally, the court granted summary judgment in favor of all of the defendants except Resort on the breach of contract claims because Resort was the only defendant which was a party to the contracts. Id. at 513-14. Accordingly, as of August 3, 1989, all claims against the Mellon Defendants were dismissed.
 
 
 9
 Subsequently, in an opinion dated June 22, 1992, the district court disposed of the remaining claims in Bhatla. It dismissed without prejudice to filing proofs of claims in bankruptcy court the purchasers' remaining claims against the U.S. Capital Corporate Defendants (except First Capital) inasmuch as they had filed petitions in bankruptcy. It then granted summary judgment to the U.S. Capital Individual Defendants and to First Capital on the remaining RICO claims because, inter alia, the purchasers had failed to establish the continuity prong of a RICO claim. See Bhatla v. Resort Dev. Corp., Civ.A. No. 88-147, 1992 WL 355433 (W.D.Pa. June 22, 1992).
 
 2. The Mellon Bank action
 
 10
 Beginning in early 1988, Mellon, as indenture trustee, brought 17 separate actions[3] in the Court of Common Pleas of Bedford County, Pennsylvania, against some of the purchasers[4] to recover on the notes and foreclose on the mortgages. These purchasers removed their cases to the district court on the basis of diversity of citizenship, and thereafter the cases were consolidated. Mellon claimed that the purchasers were in default and that, as a holder in due course, it was entitled to recover regardless of any defenses that the purchasers might have against Resort. The purchasers responded by asserting affirmative defenses of fraud in the inducement and unclean hands based on fraudulent inducement.[5] They also filed counterclaims alleging common law fraud and breach of contract, and seeking rescission of the contracts. These counterclaims are essentially the same claims they brought in the Bhatla action, except that the purchasers did not allege that there had been RICO violations.
 
 
 11
 Mellon moved to remand the cases to the state court and, alternatively, moved to dismiss the counterclaims. On August 31, 1989, the district court denied the motion to remand but, again treating the motion to dismiss as a motion for summary judgment, granted Mellon's motion on the counterclaims. While the court ruled that the evidence was insufficient to grant Mellon's motion based on its status as a holder in due course, it concluded that Mellon was entitled to summary judgment on the counterclaims for other reasons. In granting Mellon this summary judgment, the court relied, as it had in its August 3, 1989 Bhatla opinion, on Pennsylvania's two-year statute of limitations governing fraud claims. Similarly, as to the breach of contract and rescission claims, the court again noted that Mellon was not a party to the original contracts of sale. The court further indicated that even if Mellon were a party to the contracts, the purchasers had waived the remedy of rescission because of their delayed response after learning of the alleged fraud.
 
 
 12
 Thereafter, on July 28, 1992, the district court granted Mellon summary judgment on its complaints. The court found that Mellon had established a prima facie case for breach of contract and foreclosure and rejected the purchasers' affirmative defenses. Mellon Bank, N.A. v. Pasqualis-Politi, 800 F.Supp. 1297 (W.D.Pa.1992). In particular, the court held that the statute of limitations had run on the purchasers' affirmative defense of securities fraud. Id. at 1301. The court further held that the equitable doctrine of recoupment could not be used to circumvent the statute of limitations because the securities claims were not related to the nature of the demand brought by Mellon, as "they are not part of or incident to the creation of the mortgage itself," and because the undisputed evidence showed that Mellon was a holder in due course. Id. at 1301-02. Finally, the court rejected the purchasers' claims of fraud in the inducement and their charge that Mellon had unclean hands, finding no evidence in the record that Mellon was aware of the alleged fraudulent scheme employed by Resort. Id. at 1302.
 
 II.
 DISCUSSION
 
 13
 The purchasers have appealed in both the Bhatla and Mellon Bank cases. They focus their contentions on the fraud issues, i.e., whether they have put forward enough evidence linking Mellon to the alleged fraud to defeat Mellon's motions for summary judgment and whether the court correctly applied a two-year statute of limitations to their fraud claims and counterclaims. Furthermore, in the Bhatla appeal they urge that the district court erred in dismissing the action as to the U.S. Capital Corporate Defendants (other than First Capital) on the basis of those defendants' bankruptcy and the automatic stay of 11 U.S.C. § 362. However, at oral argument the purchasers made clear that they do not contest: (1) the district court's rulings on the RICO claims or the contract claims; (2) the court's conclusion that Mellon had established a prima facie case to recover on the notes and foreclose on the mortgages; or (3) the court's rejection of their affirmative defense of securities fraud. But before we reach the substantive issues raised, we first must consider our jurisdiction.
 
 A. Jurisdictional Issues
 1. The Bhatla appeal
 
 14
 As noted above, in its June 22, 1992 memorandum and order, the district court dismissed the remaining claims against the U.S. Capital Corporate Defendants (except for First Capital) without prejudice because those defendants had filed for bankruptcy. Thus the purchasers, as they acknowledged at oral argument, are free to seek relief from the automatic stay and pursue their claims against those defendants. Accordingly, the June 22 order from which the purchasers have appealed is not final, and we lack jurisdiction over the Bhatla appeal.[6] 28 U.S.C. § 1291; see Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1208-09 (3d Cir.1992); Robison v. Canterbury Village, Inc., 848 F.2d 424, 426 (3d Cir.1988); see also Willhelm v. Eastern Airlines, Inc., 927 F.2d 971, 972-73 (7th Cir.1991) (relying on Robison to find lack of appellate jurisdiction under facts similar to those here).
 
 
 15
 Nevertheless, the purchasers urge us to apply a practical, rather than technical, approach to determine finality. See Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). However, without passing on the continued vitality of Gillespie, see In re Kelly, 876 F.2d 14, 15 (3d Cir.1989) (noting that at best Gillespie has limited viability), we note that a practical approach to finality compels our result. In Welch v. Folsom, 925 F.2d 666, 668 (3d Cir.1991), we observed that exceptions to the finality requirement allowing appeals following a dismissal without prejudice are allowed when there is no risk of multiple litigation, such as when a plaintiff's remaining claim is time barred, see Green v. Humphrey Elevator & Truck Co., 816 F.2d 877, 878 n. 4 (3d Cir.1987), or when a complaint filed by a plaintiff granted leave to proceed in forma pauperis is dismissed without prejudice for failure to effect service of process because then we can assume that plaintiff cannot afford to pay for private service to cure the defect. See Welch, 925 F.2d at 668. However, this is not such a case, for the purchasers may seek to have the automatic stay lifted and repursue their claims. As it stands now, the Bhatla case has the potential to lead to piecemeal appeals. We, therefore, lack jurisdiction and will dismiss the Bhatla appeal.
 
 2. The Mellon Bank appeal
 
 16
 As noted above, Mellon instituted multiple actions in Pennsylvania state court that were removed to federal court on the basis of diversity and then consolidated. Nevertheless, the record suggested to us that one of the consolidated cases, Mellon Bank, N.A. v. Ferdinand C. Rodriguez and Maelecora P. Rodriguez; and Victor C. Rivera and Milagres Rivera, Civ.A. No. 90-796, had been removed improperly because the Riveras and Mellon are all Pennsylvania citizens. At oral argument the parties confirmed our suspicion. Thus, there is incomplete diversity in the consolidated Mellon Bank case.
 
 
 17
 However, this problem does not require us to dismiss the entire appeal. Rather, we exercise our discretion pursuant to Fed.R.Civ.P. 21 to dismiss the action against the nondiverse, dispensable parties so that it otherwise may continue. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 837, 109 S.Ct. 2218, 2225-26, 104 L.Ed.2d 893 (1989). Accordingly, we will vacate the judgment in Mellon Bank, N.A. v. Rodriguez, Civ.A. No. 90-796, and we instruct the district court to remand that case to the state court.
 
 
 18
 There is, however, a further jurisdictional problem in Mellon Bank. As noted above, the district court first granted Mellon summary judgment on the purchasers' fraud counterclaims, and thereafter granted Mellon summary judgment on its complaint. The latter opinion rejected the purchasers' affirmative defenses relating to Mellon's involvement in the alleged fraud. Mellon, relying on Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir.1977), argues that we lack jurisdiction to hear the purchasers' appeal of the dismissal of the counterclaims because their notice of appeal did not state that they were appealing from that order of dismissal. However, the purchasers' appeal of the rejection of the affirmative defenses requires us to consider Mellon's involvement in the fraud and thus, as a practical matter, we can hardly avoid considering the merits of the purchasers' counterclaims. In these unique circumstances, and in keeping with the general rule of liberal construction of notices of appeal, we conclude that we have jurisdiction over the purchasers' appeals from the dismissal of the counterclaims. See Drinkwater v. Union Carbide Corp., 904 F.2d 853, 858 (3d Cir.1990) (construing notice of appeal from order granting summary judgment on remaining claims as including count on which summary judgment was granted earlier); Williams v. Guzzardi, 875 F.2d 46, 49-50 (3d Cir.1989) (construing notice of appeal from order dismissing post-trial motion for judgment n.o.v. as including unspecified prior order denying directed verdict motion); Gooding v. Warner-Lambert Co., 744 F.2d 354, 357 n. 4 (3d Cir.1984) (construing notice of appeal from order granting summary judgment on remaining claim as including prior order dismissing other claim).
 
 B. The Merits in Mellon Bank
 
 19
 Because this case is before us on an appeal from a summary judgment, we exercise plenary review, applying the same standard used by the district court. Under Fed.R.Civ.P. 56(c) summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In making this determination, a court must draw all reasonable inferences in favor of the nonmoving party. However, to defeat a motion for summary judgment, a party cannot rest simply on the allegations in the pleadings. Rather, it must rely on affidavits, depositions, answers to interrogatories, or admissions on file. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991).
 
 
 20
 The purchasers maintain that they have met this burden, pointing to the August 12, 1982 Commitment Letter from Mellon to Resort.[7] They maintain that in view of Mellon's powers under this document, they have demonstrated that there is sufficient evidence to allow a reasonable jury to find that Mellon participated in the fraud allegedly perpetrated against them. According to the purchasers, the Commitment Letter established Mellon's control over the entire development and thus its knowledge of the alleged fraud. We disagree, and inasmuch as the purchasers can point to no other evidence to demonstrate Mellon's control or knowledge, Mellon must be regarded as a holder in due course.
 
 
 21
 In the Commitment Letter Mellon stated that to secure the loan, Resort was to give Mellon a mortgage on the property and an assignment of any and all contracts or agreements of Resort to sell the units. According to the Commitment Letter, Resort also was required, inter alia: (1) to deliver to Mellon for its approval on the closing date, the complete plans and specifications for the "Improvements,"[8] including all working drawings; (2) to give Mellon control over any funds from the purchase contracts; and (3) to deliver the actual purchase contracts for Mellon to hold in escrow. Mellon further had the right to approve any changes in the Improvements. Finally, Mellon was not required to initiate its funding until it had control over the contracts for 60 units.
 
 
 22
 The purchasers explain their position as to Mellon's control in their Mellon Bank brief as follows, "The literal language of the working agreement between the developer and [Mellon], and the inferences to be drawn therefrom, establish knowledge on the part of [Mellon] of everything that transpired with respect to the development." Brief at 23. Yet this statement is hardly logical, for it simply does not follow that by reason of a lender's protections and power under its loan agreement, it has knowledge of the tactics used by the borrower's employees to make sales. In fact, the purchasers have not pointed to anything in the Letter which demonstrates that Mellon took control of the Development. The provisions to which they do refer are simply standard security arrangements made by any prudent lender.
 
 
 23
 We are unwilling to hold that merely because a lender requires security and approval of aspects of construction, the lender thereby takes "control" of the project. To do so would wreak havoc on the lending industry, for any lender who reasonably wished to protect itself would be forced to run the risk of being sued for the unknown fraudulent acts of its borrowers. In Bankers Trust Co. v. Crawford, 781 F.2d 39, 44-45 (3d Cir.1986), we held that under Pennsylvania law a potential holder in due course does not have a duty to inquire into the underlying transaction absent evidence of bad faith. Similarly, here we refuse to believe that the Pennsylvania Supreme Court would require lenders to police the actions of their borrowers in order to avoid liability.
 
 
 24
 In addition, we note that the Commitment Letter, by its terms, covers only the construction of part of Phase I of the Development. The purchasers have not alleged any fraud in the construction of Phase I. Rather, their causes of action stem from the changes to Phase II, which were beyond the scope of the Commitment Letter.[9]
 
 
 25
 Finally, we note that the purchasers have challenged the district court's grant of summary judgment on their fraud counterclaims based on Pennsylvania's two-year statute of limitations. We, however, need not address this contention because, as just discussed, the purchasers cannot prove that Mellon defrauded them based on the evidence they submitted to the district court. Accordingly, we do not reach the district court's ruling on the statute of limitations.[10]
 
 III.
 CONCLUSION
 
 26
 For the reasons discussed, we will dismiss the appeal in Bhatla and will affirm the judgments and orders of the district court from which the purchasers appeal in Mellon Bank.
 
 
 
 *
 Honorable Sue L. Robinson, United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 There are certain slight differences in the spelling of some of the names in the captions of the two cases. The explanation is that we have followed the spelling used by the parties which was not consistent in all instances
 
 
 [2]
 We conclude there were other purchasers by reason of the number of units involved in the Development, as well as on the basis of the assignment of notes and mortgages from Resort to Mellon, which included instruments executed by persons who are not parties to this litigation
 
 
 [3]
 On August 17, 1989, the district court entered an order consolidating these separate actions. By the time the court entered final judgment on July 28, 1992, Mellon's case against Ferdinand C. Rodriguez, Maelecora P. Rodriguez, Victor C. Rivera, and Milagres Rivera (Civ.A. No. 90-796) also had been added, while another case had been settled
 
 
 [4]
 We again note that we use the term "purchasers" only as a matter of convenience. Some purchasers who are plaintiffs in the Bhatla action were not sued in the foreclosures and thus are not parties to the Mellon Bank case
 
 
 [5]
 In their answers, the purchasers also asserted that Mellon had failed to state a claim on which relief could be granted. In their briefs in the district court, they claimed that they had an affirmative defense that Mellon had violated the securities laws. Mellon Bank, N.A. v. Pasqualis-Politi, 800 F.Supp. 1297, 1300 (W.D.Pa.1992)
 
 
 [6]
 The district court on August 7, 1990, denied a motion by the purchasers to certify the order of August 3, 1989, as final under Fed.R.Civ.P. 54(b). Nevertheless, the purchasers argue that because the district court provided in its June 22, 1992 order that "[t]he Clerk shall mark this matter closed," Rule 54(b) has been satisfied. But this is not the case, for Rule 54(b) requires an "express determination that there is no just reason for delay" and "an express direction for the entry of judgment." "In the absence of such determination and direction," the order is not final and no appeal is possible
 
 
 [7]
 There is a dispute between the parties as to whether the Commitment Letter ever was introduced by the purchasers to defeat Mellon's motion for summary judgment. The confusion stems from the fact that the Mellon Bank and Bhatla cases were pending at the same time, so that it was possible for evidence to be introduced in one case but not the other. See Mellon Bank, N.A. v. Pasqualis-Politi, 800 F.Supp. at 1302. Furthermore, it appears that the district court considered the Commitment Letter in the Mellon Bank action. Id. In these unusual circumstances, rather than remanding the matter for reconsideration, we will assume that the Commitment Letter was before the district court
 
 
 [8]
 The Commitment Letter defines "Improvements" as buildings, furnishings, equipment, and incidental improvements. However, the term specifically excludes the condominium units
 
 
 [9]
 The August 12, 1982 Commitment Letter specifically states that the loan was for the purchase of a 32-acre parcel of land and for the construction of 24 one-bedroom units and 36 two-bedroom units. This description can refer only to part of Phase I, which was to have 24 one-bedroom units and 72 two-bedroom units
 
 
 [10]
 The purchasers also have filed a motion to vacate the district court's judgments, claiming that the district judge should have disqualified himself pursuant to 28 U.S.C. § 455. Inasmuch as we are affirming, exercising plenary review, we deny this motion because the alleged harm caused is cured by our plenary review. In re School Asbestos Litig., 977 F.2d 764, 786 (3d Cir.1992)