**MELLON BANK, N.A., Indenture Trustee, Plaintiff–Appellee,**

v.

**Michael J. TERNISKY, Defendant–Appellant.**

No. 92–2241.

United States Court of Appeals, Fourth Circuit.

Argued March 31, 1993.

Decided July 27, 1993.

Amended by Order Filed Aug. 4, 1993.

Donald F. Mintmire, Mintmire, Alagia, Day, Trautwein & Smith, Palm Beach, FL, argued (Vanessa M. Moore, on brief), for defendant-appellant.

Ira Steven Lefton, Reed, Smith, Shaw & McClay, Philadelphia, PA, argued (Henry F. Reichner, Reed, Smith, Shaw & McClay, Philadelphia, PA, Thomas P. Murphy, Reed, Smith, Shaw & McClay, McLean, VA, on brief), for plaintiff-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and SPROUSE, Senior Circuit Judge.

## OPINION

SPROUSE, Senior Circuit Judge:

Mellon Bank, serving as an indenture trustee, brought this action to collect on a mortgage note executed by Michael Ternisky in connection with his purchase of a condominium at a ski resort. Ternisky contended that collection of the note was barred because the condominium salesmen had defrauded him. Before Mellon filed this action, Ternisky sued Mellon for fraud in federal district court in Pennsylvania; that court granted Mellon summary judgment on statute of limitations grounds. *Bhatla v. Resort Dev. Corp.*, 720 F.Supp. 501 (W.D.Pa.1989), *appeal dismissed*, 990 F.2d 780 (3d Cir.1993). In the present action, Mellon moved for summary judgment on the alternative grounds that it held Ternisky's note in due course or

that res judicata barred Ternisky's fraud defense. The district court denied summary judgment on the former basis, but granted it on the res judicata ground. The issues on appeal are (1) whether Mellon's collection claim is barred for failure to assert it in *Bhatla* as a compulsory counterclaim under Federal Rule of Civil Procedure 13(a); (2) whether res judicata bars Ternisky's fraud defense; and (3) whether Mellon holds the note in due course. We conclude that Rule 13(a) does not bar Mellon's claim. We further conclude that res judicata does not bar Ternisky's fraud defense because the Third Circuit Court of Appeals has now held that the judgment in *Bhatla* was not final. We affirm, however, because we find that Mellon is a holder in due course and was entitled to summary judgment on that basis.

**I**

Ternisky was among several purchasers of condominium units at a ski resort in western Pennsylvania in 1982 and 1983. The developer, Resort Development Corporation ("Resort"), had planned to build the condominium complex, Blue Knob Ski and Country Club ("Blue Knob"), in four phases. Phase I was to consist of 96 one- and two-bedroom units; Phase II was to consist of 54 two-bedroom units. Part of the attraction of the four-phase development was that condominiums built in Phases II–IV would exceed the price of the Phase I condominiums, ensuring purchasers of the latter greater resale value and greater rental activity. Ternisky claims that certain Blue Knob salesmen assured him Phase II would take place.

In June 1982, Ternisky signed a sales contract for a Phase I condominium with Resort's parent company, U.S. Capital Corporation, and made out a check for the down payment. He admits reading the sales contract, which stated: "Purchaser warrants and agrees that no representations regarding tax advantage, investment potential, rental income potential, or economic benefit have been made by seller or any representative thereof and that this purchase is not based

on any such representations." He also admits receiving the Initial Public Offering Statement, dated November 25, 1981, which provided that Phase II "Need Not Be Built." [1]

In the summer of 1982, Mellon, the appellee here, agreed to provide the construction financing for Phase I. It provided Resort with a commitment letter dated August 12, 1982, requiring Resort to give Mellon a mortgage on the Phase I property and an assignment of all the sales contracts. The letter also required Resort: (1) to deliver to Mellon for its approval on the closing date the complete plans and specifications for the "Improvements" (defined as the buildings, furnishings, equipment, and incidental improvements, but excluding the condominium units); (2) to give Mellon control over any funds from the sales contracts; and (3) to deliver the sales contracts for Mellon to hold in escrow. Mellon had the right to approve any changes in the Improvements, and was required to begin its funding only when it had control over contracts for sixty units.

On February 1, 1983, Ternisky closed on the purchase of his condominium. He executed the note at issue, a $65,600 mortgage note, in favor of Resort. The note required monthly payments through February 1, 2013.

On March 1, 1983, Ternisky made the first payment on his note. Two days later, he learned that Resort had dropped its plans to develop Phase II as originally designed. Instead, it planned to build 72 efficiencies known as Blue Knob Ski & Country Club Resort Conference Center. Because the efficiencies were priced lower than the Phase I condominiums, Ternisky contends that Resort's change of plans greatly reduced the value and rental potential of his condominium. On July 1, 1983, pursuant to an indenture trust that named Mellon as the trustee, Resort transferred the mortgage notes, including Ternisky's, to Mellon via an intermediary. On December 1, 1986, Ternisky stopped making payments on his note.

---

1. The amended statement, dated November 16, 1982, also provided that Phase II "Need Not Be Built."

## A. The *Bhatla* Action

On December 5, 1986, Monmohan Bhatla, Ternisky, and several other Blue Knob condominium purchasers filed an action in federal court in Pennsylvania against: (1) Mellon and several of its subsidiaries ("Mellon"); (2) U.S. Capital Corporation, Resort, and other U.S. Capital subsidiaries ("Resort corporate defendants"); and (3) several people who worked for U.S. Capital or one of its subsidiaries ("Resort employees"). *Bhatla v. Resort Dev. Corp.*, 720 F.Supp. 501 (W.D.Pa. 1989), *appeal dismissed*, 990 F.2d 780 (3d Cir.1993). Among other claims, the plaintiffs asserted that Mellon was responsible for the alleged fraud of Resort's salesmen, because the August 1982 commitment letter from Mellon to Resort gave Mellon "total control" over the development of Blue Knob. On August 3, 1989, the *Bhatla* court granted Mellon's motion for summary judgment in its entirety and partly granted the other defendants' motions for summary judgment. *Id.* at 504.[2] It awarded summary judgment to all the defendants on all the claims except a breach of contract claim against Resort and certain RICO claims against the Resort corporate defendants and Resort employees. The *Bhatla* court ruled against the plaintiffs on their fraud claims because they had filed suit outside of Pennsylvania's two-year statute of limitations. *Id.* at 512.

The federal district court in Pennsylvania disposed of the remaining claims in *Bhatla* on June 22, 1992. At this point, all the Resort corporate defendants except First Capital Finance Corporation, a U.S. Capital subsidiary, had filed for bankruptcy. The district court began by dismissing the breach of contract claim against Resort. It then dismissed the RICO claims against all the bankrupt Resort corporate defendants without prejudice to the plaintiffs filing proofs of claims in bankruptcy court. Finally, it entered summary judgment in favor of the Resort employees and First Capital on the

RICO claims against them. *Bhatla v. Resort Dev. Corp.*, Civ. A. No. 88–147, 1992 WL 355433 (W.D.Pa. June 22, 1992) (unpublished).

The *Bhatla* plaintiffs appealed the Pennsylvania district court's decision,[3] and that appeal was pending at the time the instant case was argued before us. The Third Circuit subsequently dismissed the *Bhatla* portion of the appeal for lack of jurisdiction. *Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 788 (3d Cir.1993). It held that the last order in the district court—the June 22, 1992 summary judgment order—was not final because the plaintiffs were free to seek relief from the automatic stay and pursue their claims against the bankrupt Resort corporate defendants. *Id.* at 786. The court also ruled that it lacked jurisdiction to review the 1989 summary judgment order in favor of Mellon because the case "has the potential to lead to piecemeal appeals." *Id.* Significantly, it observed that the Pennsylvania district court had refused to certify the 1989 judgment as final under Federal Rule of Civil Procedure 54(b), and concluded that "the order is not final and no appeal is possible." *Id.* at 786 n. 6.

## B. District Court Proceedings in the Present Action

On December 3, 1991, Mellon brought this collection action against Ternisky in his home state of Virginia, based on diversity jurisdiction. Mellon sued as indenture trustee for those who had purchased bonds backed in part by Ternisky's note. Ternisky raised the affirmative defense of fraud, arguing that Mellon's "misconduct" barred it from collecting the note.

On March 22, 1992, Mellon filed a summary judgment motion, arguing, among other things, that it held the note in due course and that the final judgment in *Bhatla* barred Ternisky's fraud defense under principles of

---

**2.** Although the defendants filed Rule 12(b)(6) motions to dismiss, the court treated them as motions for summary judgment. *Bhatla*, 720 F.Supp. at 504 (citing Fed.R.Civ.P. 12(b)(6), 56).

**3.** Also appealed was a Pennsylvania federal district court's ruling for Mellon in *Mellon Bank v. Pasqualis–Politi*, 800 F.Supp. 1297 (W.D.Pa.

1992), in which Mellon had sued to collect on the notes of several other defaulting Blue Knob condominium purchasers. The court of appeals consolidated that appeal with the *Bhatla* appeal. We discuss *infra* the Third Circuit's opinion concerning this other portion of the appeal.

res judicata. But because the district court in *Bhatla* had not yet rendered a decision as to the non-Mellon defendants, Mellon decided the 1989 summary judgment order in that case was not final and abandoned its res judicata theory. On April 24, 1992, the district court denied Mellon's summary judgment motion, ruling that genuine issues of fact remained as to whether Mellon was a holder in due course. After the Pennsylvania district court granted summary judgment to the non-Mellon defendants on June 22, 1992, however, Mellon renewed its summary judgment motion in this action on res judicata grounds. The Virginia district court granted the motion and entered judgment for Mellon in the amount of $130,000.[4] It stayed the judgment, however, and ordered further briefing on the question whether the collection claim was barred because Mellon had failed to pursue it in *Bhatla* as a compulsory counterclaim under Federal Rule of Civil Procedure 13(a). On July 29, 1992, the district court ruled against Ternisky on the compulsory counterclaim issue and put its prior judgment into effect. On appeal, Ternisky maintains that the district court misapplied both Rule 13(a) and the doctrine of res judicata. Mellon brings a protective cross-appeal, urging us to affirm on the grounds that it holds Ternisky's note in due course.

## II

We first address Ternisky's contention that Mellon's failure to assert collection as a compulsory counterclaim in *Bhatla* bars this action. The compulsory counterclaim rule is provided in Federal Rule of Civil Procedure 13(a):

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Thus, if in *Bhatla* Mellon filed a pleading that omitted a counterclaim for collection, it would be barred from pursuing that claim now. We agree with the district court, however, that Mellon never filed a pleading in *Bhatla*. In response to the complaint, Mellon filed a Rule 12(b)(6) motion to dismiss, which is not a pleading. *See* Fed.R.Civ.P. 7, 12. Rule 13(a) does not come into play when a defendant files only a motion to dismiss, instead of a pleading. *Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C.Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988); *United States v. Snider*, 779 F.2d 1151, 1157 (6th Cir.1985); *Lawhorn v. Atlantic Refining Co.*, 299 F.2d 353, 356–57 (5th Cir.1962); *Potter v. Carvel Stores of N.Y., Inc.*, 203 F.Supp. 462, 464–65 (D.Md.1962), *aff'd*, 314 F.2d 45 (4th Cir.1963) (per curiam). As one court has reasoned,

[t]o hold otherwise would inappropriately punish a litigant for interposing a successful motion to dismiss before answering by stripping it of the right to bring claims that, in hindsight, could or should have been brought had the motion to dismiss failed. This would not serve the policy underlying [Rule 13(a)]: to conserve judicial resources and protect litigants from the expense of multiple lawsuits.

*Mutual Fire, Marine & Inland Ins. Co. v. Adler*, 726 F.Supp. 478, 483 (S.D.N.Y.1989).

## III

Ternisky next challenges the district court's holding that res judicata barred his fraud defense. Although not on the same reasoning advanced by Ternisky, we agree that res judicata is inapplicable. Finality of the judgment upon which a contention of res judicata rests is, of course, essential to its application. The 1989 order in *Bhatla* granting Mellon summary judgment was not final. We are compelled to that conclusion by the decision of the Third Circuit, which found the order not final. *Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 786 & n. 6 (3d Cir.1993).

## IV

Although we conclude that Mellon is not entitled to summary judgment on res judica-

---

4. This amount included principal, interest, insurance, taxes, late charges, inspections, and costs. Mellon was later awarded an additional $30,000 in attorney's fees.

ta grounds, we affirm the judgment on holder-in-due-course grounds. The Third Circuit's decision in *Pasqualis–Politi*, which was consolidated with the *Bhatla* appeal, is persuasive. *See Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 787–88 (3d Cir.1993), *aff'g Mellon Bank v. Pasqualis–Politi*, 800 F.Supp. 1297 (W.D.Pa.1992). The Third Circuit affirmed the order of the *Pasqualis–Politi* court awarding Mellon summary judgment on its claims against several defaulting Blue Knob condominium purchasers on the grounds that Mellon held the defendants' notes in due course. Although this decision, like the Third Circuit's decision on the lack of finality of Mellon's summary judgment order in *Bhatla*, was not available to the district court below, both rulings weigh heavily in our review of its judgment.

■ Mellon contended below and contends here that it holds Ternisky's note in due course and therefore is freed from Ternisky's defense that the Resort salesmen defrauded him when they sold him the condominium. If Mellon holds the note in due course, Ternisky cannot argue fraud in the inducement as a defense. 13 Pa. Const.Stat. Ann. § 3305(a)(2), (b).[5] Mellon is a holder in due course if it holds the note (1) for value, (2) in good faith, and (3) without notice of Ternisky's fraud defense. *Id.* § 3302(a)(2). Ternisky concedes that Mellon is a "holder," *id.* § 1201, of a "negotiable instrument," *id.* § 3104(a), and that Mellon took the note "for value," *id.* § 3303(a). Thus, the only question is whether Mellon took the note "in good faith."[6]

"Good faith" is "honesty in fact in the conduct or transaction concerned." *Id.* § 1201. Ternisky maintains that Mellon deceived him by providing the financing for Phase I while knowing—yet not telling him—that Phase II would not be built. He relies solely on Mellon's commitment letter to Resort, which, he contends, gave Mellon total control over the Blue Knob project. The Third Circuit, in its affirmance of *Mellon Bank v. Pasqualis–Politi*, 800 F.Supp. 1297 (W.D.Pa.1992), interpreting Pennsylvania law on this precise question, held that Mellon was a holder in due course. *See Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 787–88 (3d Cir.1993). We cannot say that the Third Circuit, in reviewing the district court's interpretation of state law de novo, *see Salve Regina College v. Russell*, 499 U.S. 225, 231–35, 111 S.Ct. 1217, 1221–23, 113 L.Ed.2d 190 (1991), "disregarded clear signals emanating from [Pennsylvania's] highest court pointing to a different rule." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir.1981). Therefore, we defer to the Third Circuit's interpretation of Pennsylvania law. *See id.; accord Independent Petrochem. v. Aetna Casualty & Sur. Co.*, 944 F.2d 940, 944–45 (D.C.Cir.1991).

In the *Pasqualis–Politi* district court, Mellon sued to collect on the notes of several defaulting Blue Knob condominium purchasers (not including Ternisky).[7] In their de-

---

**5.** A federal court sitting in diversity, of course, applies the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Because Virginia does not "bear[] an appropriate relation" to the transaction and Pennsylvania does, *see* Va.Code Ann. § 8.1-105(1) & official cmt. 3, the substantive law of Pennsylvania applies.

**6.** Whether Mellon took the note "with notice" of Ternisky's fraud defense is, in this case, a question that duplicates the good-faith issue.
    A person has "notice" of a fact when:
(1) he has actual knowledge of it; or (2) he has received a notice or notification of it; or (3) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.
13 Pa. Const.Stat.Ann. § 1201. Ternisky argues that subsection (3) applies here, because

Mellon had control over the Blue Knob project through the commitment letter. Because we find *infra* that the commitment letter did not give Mellon control over the project, we reject this argument.

**7.** Because Ternisky was not a party in *Pasqualis–Politi*, we reject Mellon's argument that he is barred under collateral estoppel from arguing that Mellon is not a holder in due course. For collateral estoppel to apply, Ternisky's interests would have to have been fully and fairly represented in *Pasqualis–Politi*. He would have to have "had a direct financial and proprietary interest in the prior litigation, and ... assumed control over [it]." *Virginia Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1312 (4th Cir.1987). We conclude that this requirement of collateral estoppel was not met.

fense, the purchasers pleaded the fraud of Resort's salesmen; they alleged that Mellon was equally responsible for the fraud because it had gained control over the Blue Knob project through its commitment letter to Resort. The district court ruled for Mellon, and the Third Circuit affirmed. The Third Circuit held that based on the commitment letter alone, the purchasers could not prove that Mellon had defrauded them:

> In the Commitment Letter Mellon stated that to secure the loan, Resort was to give Mellon a mortgage on the property and an assignment of any and all contracts or agreements of Resort to sell the units. According to the Commitment Letter, Resort also was required, *inter alia:* (1) to deliver to Mellon for its approval on the closing date, the complete plans and specifications for the "Improvements," including all working drawings; (2) to give Mellon control over any funds from the purchase contracts; and (3) to deliver the actual purchase contracts for Mellon to hold in escrow. Mellon further had the right to approve any changes in the Improvements. Finally, Mellon was not required to initiate its funding until it had control over the contracts for 60 units.
>
> ... [I]t simply does not follow that by reason of a lender's protections and power under its loan agreement, it has knowledge of the tactics used by the borrower's employees to make sales. In fact, the purchasers have not pointed to anything in the Letter which demonstrates that Mellon took control of the Development. The provisions to which they do refer are simply standard security arrangements made by any prudent lender.
>
> We are unwilling to hold that merely because a lender requires security and approval of aspects of construction, the lender thereby takes "control" of the project. To do so would wreak havoc on the lending industry, for any lender who reasonably wished to protect itself would be forced to run the risk of being sued for the unknown fraudulent acts of its borrowers.

*Bhatla,* 990 F.2d at 787–88 (footnote omitted), *aff'g Mellon Bank v. Pasqualis–Politi,* 800 F.Supp. 1297 (W.D.Pa.1992). The Third

Circuit concluded that "inasmuch as the purchasers can point to no other evidence [than the commitment letter] to demonstrate Mellon's control or knowledge, Mellon must be regarded as a holder in due course." *Id.* at 787. It then affirmed the summary judgment in favor of Mellon. *Id.* at 788–89.

■ We do the same here. Ternisky, like the purchasers in *Pasqualis–Politi,* points to no evidence that Mellon knew or had reason to know of the fraud allegedly committed by Resort's salesmen. He relies solely on the commitment letter, which established merely a lender-borrower relationship between Mellon and Resort. We are in full agreement with our sister circuit, which "refuse[d] to believe that the Pennsylvania Supreme Court would require lenders to police the actions of their borrowers in order to avoid liability." *Id.* at 788; *see also Bankers Trust Co. v. Crawford,* 781 F.2d 39, 43 (3d Cir.1986) (Pennsylvania does not adhere to the "close connection" doctrine, which imputes knowledge of an infirmity in a negotiable instrument to a transferee who is closely connected to the transferor); *id.* at 44 (under Pennsylvania law, a potential holder in due course does not have a duty to inquire into the underlying transaction " 'unless there is proof of such fact from which bad faith may be reasonably inferred' ") (quoting *Hanley v. Epstein,* 107 Pa.Super. 507, 164 A. 122, 123 (1933)); *Creeger Brick & Bldg. Supply, Inc. v. Mid–State Bank & Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151, 154 (1989) ("[I]t cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself.").

In view of the above, the judgment of the district court is affirmed.

***AFFIRMED.***